65 P.3d 657 (2003)
149 Wash.2d 1
STATE of Washington, Respondent,
v.
Ricky Ray WILSON and Rhett Butler Irons, and each of them, Petitioners.
State of Washington, Respondent,
v.
Demetrius Taylor, Petitioner.
Nos. 72104-1, 72780-5.
Supreme Court of Washington, En Banc.
Argued October 24, 2002.
Decided March 13, 2003.
*658 Nielsen, Broman & Assoc., David Koch, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Lee Yates, Ann Summers, Deputy County Prosecutors, for Respondent.
Gregory Link, Cheryl Aza, Washington Appellate Project, Seattle, for Petitioner Taylor.
Sheryl McCloud, Seattle, Amicus Curiae on Behalf of Wa. Assn. of Criminal Defense.
OWENS, J.
In each of these cases, the trial court ordered the prosecutor to produce a key State witness for a pretrial interview with the defense. Despite each prosecutor's best efforts, neither was able to do so before the court-imposed deadline and the trial judge dismissed each case pursuant to CrR 8.3(b). At issue here is whether the prosecutors' failure amounted to governmental misconduct sufficient to support dismissal under CrR 8.3(b). We hold that neither prosecutor's actions amounted to misconduct so egregious as to support dismissal and the trial court should have considered less extreme alternatives.

FACTS
Wilson/Irons. On March 14, 2000, three high school boys, including Jacob Paul, were smoking in the woods behind their school when three men approached. One man allegedly separated Paul from the group and forced him to surrender $20 by holding a hard object, which he claimed to be a gun, to the side of Paul's head. The remaining men searched the other boys' pockets. As the boys left the scene, the men threatened to shoot them if they told anyone about the incident. Paul later identified Ricky Ray Wilson and Rhett Butler Irons from photo montages. Wilson was charged with robbery in the second degree while Irons was charged with attempted robbery in the second degree.
At an omnibus hearing on May 12, 2000, the State reported that the victims' parents were resisting pretrial interviews, but to date all interviews had been scheduled. On May 18, the defense moved to dismiss, complaining that Paul remained uncooperative and arguing that Wilson was now forced to choose between his speedy trial rights and the right to have adequately prepared counsel. Irons also joined the motion, but his speedy trial expiration would not occur for an additional 30 days because he was not in custody while awaiting trial.
The State explained that Paul's mother had refused access to her son, despite several attempts to convince her to allow an interview. A detective had been assigned to visit the Paul family but had not yet reported back. The judge denied the motion to dismiss but set an interview deadline at the close of business on May 22 and agreed to revisit the issue at the time of trial.[1]
At a May 24 hearing,[2] the State conceded that no interview had been accomplished, but offered to issue a material witness warrant. When asked why such a warrant had not been sought earlier, the prosecutor stated that his supervisor had just approved this course of action. The State also suggested releasing Wilson, adding time to his speedy trial clock and giving the State more time to convince the Paul family to consent to the interview. Noting that the prosecutor had *659 not done anything wrong, defense counsel emphasized the missed deadline and argued that the prosecutor should have sought the material witness warrant earlier. Without the interview, counsel for Wilson was unprepared to go to trial because Paul was a key State witness. The judge put the case on standby until 1:30 p.m., stating, "[i]f the witness interviews aren't done by then, I'm going to dismiss the case." Report of Proceedings (RP) (May 24, 2000) at 9.
The prosecutor and a police officer managed to track down Paul at 12:45 p.m. Paul was home alone and insisted that the interview occur there. The prosecutor called the defense attorneys on their cell phones at 1:00 p.m. He requested that they travel to Paul's home in Shoreline or conduct the interview by phone. Both declined.
At the 1:30 p.m. hearing, the State argued that it had produced the witness. The defense moved to dismiss, explaining that an inperson interview was important[3] and one could not drive to Shoreline, conduct an interview, and return to Seattle in the available 45 minutes. Although the defense did not blame the prosecutor, the witness had impeded the investigation from the beginning. In response, the State explained that Paul had been under the misapprehension that the defendants would be present at the interview and he was afraid to attend an interview outside of his home. The State asserted that other alternatives could have been arranged.
The judge dismissed with prejudice, pursuant to CrR 8.3(b), because Paul and his mother had repeatedly refused to cooperate, all court-imposed deadlines had been broken, and the interview was essential because Paul had identified the defendants. Moreover, "[d]efendants are entitled to an opportunity to have an interview with [the witness]" to prepare their defense. Suppl. RP (May 24, 2000) at 14.
The State appealed and Division One of the Court of Appeals reversed. State v. Wilson, 108 Wash.App. 774, 31 P.3d 43 (2001). The court held that, when considering a motion to dismiss based on "the prosecutor's failure to fulfill [a] promise to assist defense counsel with discovery, the trial court should consider whether the ... failure ... is excusable, and whether [he] could have legally compelled or accomplished the act." Id. at 779, 31 P.3d 43. The court reasoned that the State could not compel the witness to talk to anyone outside of court and the prosecutor here had taken reasonable steps to arrange the interview before and after the court ordered him to do so. Id. at 779-80, 31 P.3d 43. Finally, defense counsels' refusal to conduct the interview on May 24 was unreasonable because a slight delay in the afternoon hearing would have been immaterial and, in light of the short deadline, the defense should have been ready to interview Paul at a moment's notice. Id. at 780, 31 P.3d 43. Therefore, even though the State had agreed to arrange the interview, its failure was not due to misconduct; instead the fault rested with the witness. Id. at 780-81, 31 P.3d 43.
Taylor. Demetrius Taylor was charged with theft in the second degree for shoplifting 14 rings and 18 bracelets from a Nordstrom store. Shawn Seise, a store loss prevention agent, witnessed the crime.
In October 2000, defense investigator Cooper contacted Seise by phone and Seise left a message in return. Apparently, Cooper did not return Seise's call until January when she left three messages for Seise from January 10 to 19, 2001.[4] On February 9, the defense first informed the State that it was having difficulty contacting Seise. That day, the prosecutor left a message instructing Seise to contact Cooper. On February 13, Cooper again left a message for Seise. On February 20, the State was notified on the record that Seise had not yet been interviewed. The prosecutor explained that Seise *660 was a busy student and agreed to contact him herself. On February 21-22, she called Seise three times and left messages twice. Because the defense never heard from Seise, on February 23 Taylor moved to dismiss the case under CrR 8.3(b) and CrR 4.7. The court refused to dismiss at that time, but ordered on the omnibus checklist: "Shawn Seise to be produced for an interview by the State by 3-2-01." Clerk's Papers at 54. Omnibus was set over to March 2.
On February 23, the prosecutor left another message for Seise and assigned a detective to visit him while she was on vacation. During the week of February 26, the detective attempted to contact Seise several times. On February 27, Seise left a message for the prosecutor, indicating that he would call Cooper. He also left a message for Cooper on February 27 or 28. On February 28, the Nisqually earthquake occurred and the courthouse was closed until March 3. On March 5 the prosecutor returned from vacation and left a message for Seise. On March 6 she received a return call from Seise but did not speak with him. That afternoon, the defense advised the prosecutor that Seise had not contacted them. When the prosecutor got in touch with Seise, he reported that he had indeed left a message for Cooper the previous week. He had also called Cooper but had gotten only voice mail on March 6. Cooper stated that she received messages from Seise on February 28 and March 6 at 5:00 p.m.
On March 7, the date of speedy trial expiration, the defense moved to dismiss. The State reported that Seise was taking a final exam that morning but he would be at the courthouse, available for interview, at 2:00 p.m. The court held the matter over until 1:30 p.m., but then dismissed. The judge relied on the extent of the difficulties experienced and the missed deadline of March 2, but expressed no finding of prejudice. Seise was indeed present at the prosecutor's office for interview at 2:00 p.m.
The State appealed and, in an unpublished opinion, Division One of the Court of Appeals reversed because Seise's conduct could not be attributed to the State, the State had acted with due diligence, and the defense had failed to establish misconduct. State v. Taylor, No. 48522-9-1, noted at 111 Wash.App. 1039, 2002 WL 974640, at *3-4 (2002). Thus, the Court of Appeals held that the trial court had abused its discretion when it dismissed the case. Id. at *3.

ISSUE
Was the trial court's dismissal in each case proper under CrR 8.3(b)?

ANALYSIS
At issue is whether the trial court in each case abused its discretion when it found that the prosecutor committed misconduct by failing to produce the witness for pretrial interview. CrR 8.3(b) reads:
The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.[5]
To support CrR 8.3(b) dismissal, a defendant must show both "arbitrary action or governmental misconduct" and "prejudice affecting [his or her] right to a fair trial." State v. Michielli 132 Wash.2d 229, 239-40, 937 P.2d 587 (1997) (citing State v. Blackwell, 120 Wash.2d 822, 831, 845 P.2d 1017 (1993)). A trial court's decision to dismiss under CrR 8.3(b) can be reversed only when a trial court has abused its discretion by making a decision that is manifestly unreasonable or based on untenable grounds. Michielli, 132 Wash.2d at 240, 937 P.2d 587 (citing Blackwell, 120 Wash.2d at 830, 845 P.2d 1017).
First, we must determine whether the prosecutors in theses cases committed *661 misconduct when they failed to comply with the trial court's order to produce the witness for interview by the court-imposed deadline. Governmental misconduct "`need not be of an evil or dishonest nature; simple mismanagement is sufficient.'" Michielli, 132 Wash.2d at 239, 937 P.2d 587 (emphasis omitted) (quoting Blackwell, 120 Wash.2d at 831, 845 P.2d 1017). Yet Washington courts have clearly maintained that dismissal is an extraordinary remedy to which the court should resort only in "truly egregious cases of mismanagement or misconduct." State v. Duggins, 68 Wash.App. 396, 401, 844 P.2d 441, affd, 121 Wash.2d 524, 852 P.2d 294 (1993); see also Blackwell, 120 Wash.2d at 830, 845 P.2d 1017.
In 1990, Division One of the Court of Appeals affirmed a trial court's finding of prosecutorial misconduct. State v. Sherman, 59 Wash.App. 763, 801 P.2d 274 (1990). The Sherman court found that the State had agreed to undertake production of the Internal Revenue Service (IRS) records of one of its witnesses, as reflected on the omnibus order, but the State failed to produce the records by the court-imposed deadline even though the State was given several weeks to comply. Id. at 765-66, 768, 801 P.2d 274. Although the records were not in the State's possession, they were available to the State's chief witness, who failed to find them in his files. Id. at 769, 801 P.2d 274. The State did not follow up to ensure that the records would be available in time for trial and copies were not requested from IRS until long after the court-imposed deadline. Id. Furthermore, the State waited until after the trial date to seek reconsideration of the order obligating it to produce the records in the first place. Id. at 768, 801 P.2d 274. The Sherman court held that such mismanagement amounted to prosecutorial misconduct.[6]Id.
In contrast, in Blackwell, this court held that a prosecutor's failure to produce personnel records did not amount to misconduct, In that case, the trial court ordered the State to produce the service records and personnel files of two Tacoma police officers. 120 Wash.2d at 825, 845 P.2d 1017. The State objected, arguing that "the prosecutor did not have access to or control over the documents," and the City Attorney's office had already denied access to the records. Id. This court held that the prosecutor had acted reasonably: he attempted to obtain the records, advised both the court and defense counsel of his efforts, and suggested that the court issue a subpoena duces tecum. Id. at 825, 832, 845 P.2d 1017. Thus, "[t]here was no showing of `game playing', mismanagement, or other governmental misconduct on he part of the State that prejudiced the defense." Id. at 832, 845 P.2d 1017.
We hold that in both of the caseg at hand the prosecutor acted at least as diligently as the Blackwell prosecutor when attempting to the interviews. Neither prosecutor engaged in unfair gamesmanship and each took reasonable steps to comply the court order.
The Wilson Prosecutor was given only two business days after the court order to meet the court-imposed deadline (May 19 and 22), unlike the Sherman prosecutor who had severaI weeks to produce the IRS records. See Sherman, 59 Wash.App. at 765, 801 P.2d 274. The Wilson prosecutor did not ignore his obligation. He attempted to contact the witness and assigned a detective to contact the witness's family. Finally, on May 24, the the prosecutor did what he could to track down the witness for a last-minute interview before 1:30 PM Given these efforts, we find that the Wilson prosecutor did not engage in unfair gamesmanship, nor did he egregiously neglect his obligation.
In Taylor, the defense waited until Februagement 2001, to inform the prosecutor on the record that Seise still had not been inter-In viewed. Thereafter, the prosecutor called Seise at least once every day and arranged for a detective to contact him while she was on vacation. Furthermore, between the omnibus *662 order and the court-imposed deadline, the prosecutor was on vacation, Seise was taking exams, and the Nisqually earthquake closed the courthouse for several days. When the prosecutor returned from vacation on March 5, she immediately attempted to contact Seise. Finally, the record shows that Seise did contact the defense investigator twice, but got no response. Under these circumstances, the Taylor prosecutor's failure to arrange the interview cannot be characterized as egregious.
The defense argues that the State in each case should have taken steps to arrange a court-ordered deposition or issue a material witness warrant as soon as it became clear that the witness was uncooperative. However, we hold that the State's failure to take this step in each case did not amount to egregious misconduct. In Taylor, Mr. Seise gave the prosecutor every indication that he was very busy, yet cooperative, and he never expressed unwillingness to submit to a defense interview. In Wilson, the prosecutor was left with less than three business days after the hearing on May 18 to produce the witness for an interview. We believe that the failure to seek a deposition in such a short time period did not amount to prosecutorial misconduct.
Finally, dismissal under CrR 8.3 is an extraordinary remedy, one to which a trial court should turn only as a last resort. The trial judge in each case ignored "intermediate remedial steps" when it ordered the "extraordinary remedy of dismissal." State v. Koerber, 85 Wash.App. 1, 4, 931 P.2d 904 (1996). Because Irons was not in custody and his speedy trial expiration was not imminent, his case should not have been dismissed until speedy trial expiration became an issue.[7] Furthermore, the trial court could have ordered Wilson and Taylor released in order to extend the speedy trial expiration from 60 to 90 days, giving the prosecutors more time to arrange interviews with the now cooperating witnesses. Although release may not be ideal, such an intermediate step should have been attempted before resort to the extraordinary remedy of dismissal. Alternatively, this court has allowed exclusion of a witness's testimony as a sanction for a discovery violation. See State v. Hutchinson, 135 Wash.2d 863, 880-84, 959 P.2d 1061 (1998), aff'd, 147 Wash.2d 197, 202-06, 53 P.3d 17 (2002). Thus the trial court should have also considered the less extreme alternative of excluding Paul's and Seise's testimony, rather than dismissing the cases altogether.
For all of these reasons we hold that the prosecutors in these cases acted reasonably and their conduct did not amount to misconduct. Furthermore, the trial judge should have considered intermediate alternatives before resorting to the extraordinary remedy of dismissal.
Because no prosecutorial misconduct occurred, we need not reach the issue of whether the defendants suffered prejudice affecting their right to a fair trial. However, we recognize that "the defendant's right to compulsory process includes the right to interview a witness in advance of trial." State v. Burn, 87 Wash.2d 175, 181, 550 P.2d 507 (1976). Furthermore, to force a defendant to choose between the right to a speedy trial and the right to adequately prepared counsel because an interview has not occurred by the speedy trial expiration does materially affect a defendant's right to a fair trial such that prejudice results. See Michielli, 132 Wash.2d at 240, 937 P.2d 587 (citing State v. Price, 94 Wash.2d 810, 814, 620 P.2d 994 (1980)).

CONCLUSION
We affirm the Court of Appeals in each of these cases on the grounds that the prosecutors did not commit governmental misconduct warranting the extraordinary remedy of dismissal.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, SMITH, J. Pro Tern.
*663 SANDERS, J., dissenting.
The question posed is whether the trial court abused its discretion under CrR 8.3(b), which allows a trial court to dismiss criminal charges for governmental misconduct. Upon the prosecution's violation of a court order in each case to arrange an interview between a key prosecution witness and the defense by a date certain, the court dismissed pending charges. Contrary to the majority's conclusion, I find no abuse of trial court discretion and would affirm the trial court.
CrR 8.3(b) provides in part:
The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. "Governmental misconduct" can be simple prosecutorial mismanagement. State v. Blackwell, 120 Wash.2d 822, 831, 845 P.2d 1017 (1993). We review a trial court's dismissal under CrR 8.3(b) for manifest abuse of discretion, and will reverse only when the dismissal is "`manifestly unreasonable,^ or is exercised on untenable grounds or for untenable reasons.'" State v. Miehielli, 132 Wash.2d 229, 240, 937 P.2d 587 (1997) (quoting State v. Blackwell, 120 Wash.2d at 830, 845 P.2d 1017). But these dismissals were supported by evidence of misconduct which prejudiced the defendants' right to a fair trial. The dismissals were therefore neither manifestly unreasonable nor exercised on untenable grounds.
The majority argues the trial court abused its discretion claiming there was insufficient misconduct to justify dismissal as a matter of law. The Court of Appeals characterized the misconduct as breaking a promise to the defense to secure a meeting with its witnesses due to the witnesses's intransigence and excused the misconduct by claiming the prosecution lacked power to legally compel the witnesses to appear for a meeting in any event. State v. Wilson, 108 Wash.App. 774, 780-81, 31 P.3d 43 (2001), review granted, 146 Wash.2d 1008, 52 P.3d 520 (2002); State v. Taylor, noted at 111 Wash.App. 1039, 2002 WL 974640, *3 (Wash.Ct.App. May 13, 2002), review granted, 146 Wash.2d 1021, 52 P.3d 521 (2002). In fact, however, the prosecution in each case not only failed to keep its promise to arrange the meetings, it violated a court order which required it to do so.
The majority does not mischaracterize the claims, as did the Court of Appeals, but argues prosecutors made their best efforts to comply with the orders and therefore should not be faulted. Majority at 658. But the record shows the prosecutors had the actual power to produce these witnesses and, in failing to do so, did not make their "best efforts" to comply.
In Wilson the prosecutor informed the judge that he had failed to arrange the interview by the specific date ordered by the court but that now the prosecutor was willing to take additional steps to avoid dismissal, including a personal visit to the witness's home and/or seeking to obtain a material witness warrant. 3 Report of Proceedings (RP) at 5. The judge asked why a material witness warrant had not been sought earlier, and the prosecutor answered that he had just received authorization from his supervisor. 3 RP at 9. No specific reason was given why the prosecutor had not previously attempted to visit the witness at his home other than that the prosecutor was on vacation part of this time. 2 RP at 10. Similarly the material witness warrant was not obtained because the prosecutor's supervisor did not timely authorize it. Thus, it cannot be maintained that the prosecution did in fact make its best effort to comply with the court order or that it lacked power to compel a meeting with its witness in each case.
Similarly, the trial court in Taylor ordered an interview take place by March 2, 2001; however, the interview was not arranged by the deadline, and still had not been arranged as of the hearing on March 7, 2001 (though the prosecution asserted that the witness would finally be available at 2:00 P.M. that day). RP at 6. Again the record does not show any attempt by the prosecution to produce the witness by a material witness warrant or by other means beyond a few phone calls.
*664 At minimum there was prosecutorial mismanagement in each of these cases leading not only to broken promises but also to violation of a court order previously entered without objection. Such mismanagement more than satisfies the misconduct required by CrR 8.3(b). Blackwell, 120 Wash.2d at 831, 845 P.2d 1017.
The majority contends the misconduct of the prosecution was not sufficiently "egregious" to justify dismissal under CrR 8.3(b). Majority at 658. However, the majority's threshold requirement of egregiousness is not found in the plain language of CrR 8.3(b). Moreover, it is an invitation to subjective ad hoc decision making. The stated threshold by the clear language of the rule is that the misconduct must cause "prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b). Once misconduct is shown, the trial court may dismiss if there is prejudice to the accused's right to a fair trial. The remedy is extraordinary because only misconduct causing prejudice to the right to a fair trial authorizes dismissal. See Blackwell, 120 Wash.2d at 830, 845 P.2d 1017 (citing City of Spokane v. Kruger, 116 Wash.2d 135, 144, 803 P.2d 305 (1991)). To hold that the misconduct must not only prejudice the defendant but also be "egregious" signals this court will tolerate some prosecutorial mismanagement resulting in prejudice to a defendants' constitutional right to a fair trial. Moreover, the majority misses the obvious point: if misconduct causes prejudice to a defendant's right to a fair trial it is egregious for just that reason.
The majority simply declines to consider whether this misconduct prejudiced the defendants. Clearly it did. The prosecution first assumed the burden to arrange interviews with its intransigent witnesses, inviting reliance by the defense and the court. Later, when the court ordered the prosecution to arrange the interviews, the defense was again induced to rely on the promise backed up by a court order. As a result the interview which was necessary for defense trial preparation had not been arranged in advance of trial. The right to adequate trial preparation includes the right to conduct a full investigation of the facts, including the right to interview witnesses in advance of trial. State v. Burri, 87 Wash.2d 175, 180-81, 550 P.2d 507 (1976). To pursue belated interviews would have forced the defense to seek further delay of the trial itself should any follow-up appear necessary. A forced choice between the right to a speedy trial and the right to adequate trial preparation prejudices the right to a fair trial. Michielli, 132 Wash.2d at 240, 937 P.2d 587 (citing State v. Price, 94 Wash.2d 810, 814, 620 P.2d 994 (1980)).
I would therefore reverse the court of appeals in each case, affirm the trial court, and dismiss.
NOTES
[1] The Court of Appeals reported the deadline as May 19, but the omnibus order set the deadline at May 22.
[2] Wilson's speedy trial expiration was originally May 20. The case was continued to May 23 to accommodate the prosecutor's vacation and again to May 24 due to illness.
[3] The defense argued that an investigator, needed for impeachment purposes, was not available to attend the interview on such short notice, and counsel for Irons explained that a cell phone interview was inappropriate because cell phones are unreliable, as shown when her phone cut off during her conversation with the prosecutor.
[4] The trial was originally set for October 2000 but Taylor failed to appear for an omnibus hearing. Once in custody, Taylor faced drug charges that led to a continuance and additional delays ultimately pushed the trial date to March 7, 2001.
[5] Judge Spearman did not set forth written reasons for his finding of misconduct in either case. However, in State v. Sonneland, 80 Wash.2d 343, 350, 494 P.2d 469 (1972), this court held that a case should not be remanded solely to complete the formality of adding written reasons where the reasons were clearly evident from the court's oral opinion.
[6] Although the Sherman trial court gave four reasons for its CrR 8.3(b) dismissal (the State also filed a late amendment of the information, filed a late motion for reconsideration of the omnibus order, and made a motion to expand the witness list on the day of trial), the Court of Appeals held that the State's failure to produce the IRS records was enough "in and of itself" to support dismissal. Sherman, 59 Wash.App. at 768, 801 P.2d 274.
[7] CrR 4.4(c)(2)(i) allows a trial court to grant severance of defendants where it is necessary to protect a defendant's right to speedy trial.