# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 48235-5-II |
| Appellant, | |
| v. | |
| RICKO FERNANDEZ EASTERLING, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — The State appeals the trial court's order granting Ricko Easterling's CrR 8.3(b) motion to dismiss for government misconduct based on late disclosure of two child victims' sexual assault nurse examiner (SANE) exams. The State argues that the trial court abused its discretion by granting Easterling's motion to dismiss. The trial court did not abuse its discretion in dismissing the charges for one of the victims, but dismissal was not the appropriate remedy for the charges against the other victim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS

The State charged Easterling with five counts of rape of a child in the first degree and two counts of communication with a minor for immoral purposes based on allegations that Easterling had sexually assaulted A.L.K.,[1] who was nine years old at the time, and her sister, E.E.K., who

---

[1] We refer to the minor witnesses/victims by their initials to protect their privacy.

was ten years old. The charges resulted from a Child Protective Services (CPS) referral based on statements A.L.K. and E.E.K. made to their therapist. After the referral, the Kitsap County Sexual Assault Unit interviewed A.L.K. and E.E.K. A.L.K. disclosed that Easterling had taught her and E.E.K. to play "strip poker" with Uno cards. Clerk's Papers (CP) 5. Easterling played this game with the girls on at least two occasions and on both occasions A.L.K. and E.E.K. ended up naked. A.L.K. also disclosed that on other occasions, Easterling "had her get on her hands and knees on the bed and pulled down her pants and stuck his hand in her but (sic) like a tail." CP at 5. A.L.K. had also seen Easterling put his thumb in E.K.K.'s butt. E.E.K. also made statements about the games of "strip poker." CP at 4.

On September 30, 2015, Easterling's jury trial began and the parties gave opening statements. On October 1, 2015, the girls' mother informed Easterling's defense counsel that SANE exams had been performed on the girls at Harrison Medical Center. The prosecutor informed the trial court that it did not have a report from any SANE exams for the girls and to his knowledge, SANE exams had not been done. However, by that afternoon, the prosecutor was able to confirm that SANE exams had been performed on the girls. The prosecutor obtained copies of the SANE exams and provided them to Easterling.

Easterling made a CrR 8.3(b)[2] motion to dismiss the charges based on government mismanagement. The court continued the trial until October 5 to allow the parties to submit briefing on Easterling's motion to dismiss.

At the hearing on Easterling's CrR 8.3(b) motion, the State presented testimony from the lead detective in the case, William Schaibly, and the SANE nurse from Harrison Medical Center, Jolene Culbertson. Schaibly testified that he was never notified that a SANE exam had been done for the girls. Schaibly explained that he never contacted Harrison Medical Center about the SANE exams because normally law enforcement is notified when a SANE exam is done. And Schaibly testified that he informed the prosecutor that a SANE exam had not been done for the girls because he mixed up the current case with another case he was working on.

Culbertson testified that, as a SANE nurse who worked for Harrison Medical Center, her duty is to her patients. Patients who undergo SANE exams have the same privacy interests as any other patient who comes to the Medical Center. SANE exams cannot be released unless a patient signs a consent form. In sexual assault cases, it is the SANE nurses' responsibility to perform "medical examinations to make sure that kids are okay." Report of Proceedings (RP) (Oct. 5, 2015) at 36.

---

[2] CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Culbertson also testified that E.E.K. agreed to a genital exam, which was normal, and she was "pleasant and talkative." RP (Oct. 5, 2015) at 30. A.L.K. declined a genital exam, and was "tearful and anxious." RP (Oct. 5, 2015) at 28. Culbertson testified that based on the exams, she was not able to make any findings or conclusions regarding whether a sexual assault had occurred regarding either girl. Culbertson explained,

> [A normal exam] doesn't mean that nothing happened. It means that, you know, there are usually three choices: Maybe nothing happened, and there is nothing that you would see, maybe something happened and it has healed without scar formation, or something happened and there was no injury.

RP (Oct. 5, 2015) at 33-34.

After the hearing, the trial court granted Easterling's CrR 8.3(b) motion to dismiss and entered written findings of fact and conclusions of law. The trial court found that Easterling was in custody and his time for trial under CrR 3.3(b)(1)[3] would expire on October 8, 2015. And the trial court found that Easterling had requested copies of a SANE exam on multiple occasions, but that the State "consistently represented that no SANE exam occurred and there were no reports of any SANE exam," and that neither law enforcement nor the State contacted the SANE department at Harrison Medical Center to determine whether SANE exams had been done. CP at 52. The trial court found that, although SANE is not a department of the Kitsap County Prosecutor's Office, that here the SANE department "acted on the government's behalf in this case, as well as it acts on the government's behalf in a general sense." CP at 55.

---

[3] CrR 3.3(b)(1) requires that a defendant detained in jail be brought to trial within 60 days of the specified commencement date under CrR 3.3(c) or within 30 days following an excluded period under CrR 3.3(e).

The trial court concluded that the SANE exams were exculpatory because:

The exam report for EEK was normal. There are inferences to be drawn from that normal report that include the inference that there was no abusive action on the part of Mr. Easterling. The jury could conclude that the report of EEK is inconsistent with the rendition of facts that was expected to be presented that she was raped by Mr. Easterling by having him put his finger and penis in her anus. That inference will cast doubt on the communicating with a minor charge that applies to the alleged conduct towards EEK. It also impacts the veracity of the remaining charges regarding ALK. If the jury concludes that EEK was not truthful, the inference concerning any testimony she might give concerning the allegations against Mr. Easterling concerning ALK, or testimony of ALK concerning the allegations against Mr. Easterling concerning EEK could be exculpatory as to those charges in which ALK is the alleged victim.

CP at 57. Because the SANE exams were exculpatory, the trial court also ruled that the State had

failed to fulfill its responsibility under *Brady*.[4]  Therefore, the State's "misconduct was not evil or

dishonest, but was mismanagement of the case." CP at 57.

The trial court also found that Easterling established "clear prejudice" because:

The late disclosure of the SANE reports placed the Defendant with a choice of whether to cling to the right to speedy trial and proceed with trial without the benefit of his counsel having explored the possible transcripts of the testimony of Ms. Culbertson and the possibility of an expert witness to consult and/or testify at trial; or forfeit that right and cling to the right to effective assistance of counsel while remaining in custody for a period well beyond the CrR 3.3 right to trial deadline of October 8, 2015.

CP at 58. The trial court considered alternative remedies to dismissal, such as recessing the case

to allow Easterling time to prepare, dismissing only some of the charges, or declaring a mistrial.

The trial court concluded that an extended recess was logistically impracticable and would require

the jury to put their lives on hold for an extended period of time. The trial court rejected the idea

of dismissing only some of the charges because the exculpatory nature of the SANE exams cast

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

doubt on all of the charges. And, the trial court concluded that a mistrial would simply "replace the issue of a *Brady* due process violation with the issue of violation of speedy trial rules." CP at 59.

The State appeals the trial court's order granting Easterling's motion to dismiss under CrR 8.3(b) and dismissing all charges regarding both A.L.K. and E.E.K. with prejudice.

ANALYSIS

The State argues that the trial court erred by granting Easterling's CrR 8.3(b) motion to dismiss. We disagree.

The trial court's order dismissing all the charges against Easterling is based on the trial court's belief that the charges against A.L.K. are indivisible from the charges against E.E.K. But here, the charges against A.L.K. are distinct from the charges against E.E.K. and can proceed without any reference to E.E.K. or the allegations related to her. When the charges are reviewed separately, the trial court properly granted Easterling's motion to dismiss the charges related to E.E.K., but there was no exculpatory evidence to justify dismissing the charges related to A.L.K. Accordingly, we affirm in part and reverse in part.

I. STANDARD OF REVIEW

We review a trial court's decision on a CrR 8.3(b) motion to dismiss for an abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Michielli*, 132 Wn.2d 240. CrR 8.3(b) states,

6

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

To grant a CrR 8.3(b) motion to dismiss, the trial court must find (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Dismissal based on misconduct is an extraordinary remedy reserved for egregious cases. *State v. Wilson*, 149 Wn.2d 1, 9, 12, 65 P.3d 657 (2003). The trial court should order dismissal only "as a last resort." *Wilson*, 149 Wn.2d at 12.

## II. CHARGES RELATED TO E.E.K.

### A. GOVERNMENT MISMANAGEMENT–*BRADY* VIOLATION

The governmental misconduct at issue need not be evil or dishonest, simple mismanagement is sufficient to support dismissal under CrR 8.3(b). *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993). Here, the trial court determined that the State mismanaged the case by failing to disclose exculpatory evidence as required by *Brady*. *Brady* imposes a duty on the State to disclose material evidence favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The State has a duty to learn of any favorable evidence "known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

The State argues that there was not government mismanagement because it disclosed all the evidence in its possession and relied on statements from the lead detective that the SANE exams had not been done. But, government mismanagement does not require bad faith or misconduct; simple mismanagement is sufficient. *Blackwell*, 120 Wn.2d at 831. Here, the defense made multiple inquiries about the SANE exams and the State made no effort to contact the SANE department and verify whether SANE exams had been performed. When the defense notified the State that the SANE exams had been performed on the girls, the State was able to obtain copies of the SANE exams within the same day. The trial court correctly determined that there was no evil intent or dishonesty behind the State's actions. However, given the ease with which the State could have verified and obtained the SANE exams, the trial court did not abuse its discretion by concluding that the State's failure to even attempt to contact the SANE department was governmental mismanagement.

B. EXCULPATORY EVIDENCE

In addition to establishing governmental mismanagement, the evidence that the State failed to disclose must be material either because it is exculpatory or impeaching. *Strickler*, 527 U.S. at 281-82. The State argues that the evidence was not exculpatory because the SANE exams did not prove or disprove whether the alleged abuse occurred. The State argues that E.E.K.'s exam was not exculpatory because Culbertson testified that a normal genital exam could mean that no abuse occurred, or it could mean that abuse occurred but left no injury. But, because we review the trial court's order for abuse of discretion, and the trial court clearly laid out its reasons for concluding that the evidence was exculpatory as to E.E.K, we hold that the trial court did not abuse its discretion in ruling that the evidence was exculpatory as to this victim.

Here, the trial court concluded that E.E.K.'s SANE exam was exculpatory because the lack of injury cast doubt on the claim that Easterling anally penetrated her. And because the evidence cast doubt on the claim of penetration, it subsequently cast doubt on the credibility of E.E.K.'s statement. The trial court engaged in a clear and reasonable analysis when concluding that E.E.K.'s SANE exam was exculpatory and it did not abuse its discretion. And the trial court did not abuse its discretion in concluding that the governmental mismanagement resulted in the failure to disclose exculpatory evidence as to E.E.K. Therefore, the first element required for dismissal under CrR 8.3(b), arbitrary action or governmental misconduct, is satisfied.

C. PREJUDICE

The second element required for dismissal under CrR 8.3(b) is prejudice to the defendant. *Rohrich*, 149 Wn.2d at 654. The State argues that the trial court erred by concluding that there was prejudice because (1) Easterling was not prejudiced by the evidence itself and (2) there were less severe remedies. We disagree.

1. Prejudice to Easterling's Right to a Fair Trial

Our Supreme Court has clearly recognized that "to force a defendant to choose between the right to a speedy trial and the right to adequately prepared counsel because an interview has not occurred by the speedy trial expiration does materially affect a defendant's right to a fair trial such that prejudice results." *Wilson*, 149 Wn.2d at 13. Here, Easterling's time for trial period under CrR 3.3 would have expired only seven days after the State provided the SANE exams, and only three days after the actual hearing on Easterling's CrR 8.3(b) motion to dismiss. And, the trial court concluded that, to be adequately prepared, Easterling's defense counsel would have to interview and retain an expert witness and review Culbertson's prior testimony in related cases.

The trial court did not abuse its discretion in concluding that the disclosure of E.E.K.'s SANE exam required Easterling's defense counsel to do a relatively extensive amount of additional work in order to prepare. And, the trial court did not abuse its discretion in concluding that the defense attorney would not be able to be adequately prepared within the three days before Easterling's time for trial would expire. Because Easterling was clearly in a position of being required to choose between his time for trial right and his right to prepare counsel, he was prejudiced by the State's late disclosure of E.E.K.'s SANE exam. The trial court did not abuse its discretion in concluding that the late disclosure of E.E.K.'s SANE exam resulted in prejudice to Easterling's right to a fair trial.

2. Lesser Remedies

The State also argues that the trial court abused its discretion by failing to consider lesser remedies. Dismissing charges under CrR 8.3(b) is an "'extraordinary remedy.'" *Wilson*, 149 Wn.2d at 9. Dismissal under CrR 8.3(b) is limited to those "'truly egregious cases of mismanagement or misconduct.'" *Wilson*, 149 Wn.2d at 9 (quoting *State v. Duggins*, 68 Wn. App. 396, 401, 844 P.2d 441, *aff'd*, 121 Wn.2d 524, 852 P.2d 294 (1993)). The trial court should resort to dismissal under CrR 8.3(b) "only as a last resort." *Wilson*, 149 Wn.2d at 12.

Here, the State proposed two lesser, alternative remedies to dismissal of the charges related to E.E.K.: (1) recessing the trial to allow Easterling's defense counsel time to prepare, or (2) declaring a mistrial. In its order, the trial court very clearly set out why it believed these choices were either impracticable or inappropriate. The trial court explicitly considered recessing the trial and declaring a mistrial. And, its reasons for rejecting these lesser remedies were sound and well-

reasoned. Accordingly, the trial court properly considered less severe remedies as to the charges related to E.E.K.

Because both requirements for dismissal under CrR 8.3(b)–arbitrary action or governmental misconduct and prejudice–are satisfied as to the charges related to E.E.K., the trial court did not abuse its discretion by granting Easterling's CrR 8.3(b) motion to dismiss those charges. We affirm the portion of the trial court's dismissing the charges related to E.E.K.

### III. CHARGES RELATED TO A.L.K.

The trial court appeared to grant the motion to dismiss the charges against A.L.K. based on its view that the charges related to E.E.K. were indivisible from the charges related to A.L.K. This was in large part because A.L.K.'s statements regarding Easterling's abuse included statements regarding Easterling's conduct with E.E.K. as well. Based on A.L.K.'s statements, the trial court found that E.E.K.'s SANE exam was exculpatory as to the charges related to A.L.K. because it impeached A.L.K.'s credibility. We disagree. Here, there is no exculpatory evidence as to the charges related to A.L.K. to support granting a motion to dismiss. Accordingly, the trial court abused its discretion by granting the motion to dismiss as to the charges related to A.L.K.

First, A.L.K's SANE exam was not exculpatory regarding the charges involving her. She refused a physical exam, so unlike for E.E.K, there was no physical evidence arising from the exam that was relevant to the charges involving A.L.K. And the trial court did not make a finding that A.L.K.'s denial of the genital exam was exculpatory or impeaching.

Second, E.E.K.'s negative SANE exam is not exculpatory as to the charges related to A.L.K. The charges related to A.L.K. can proceed without any reference to Easterling's alleged

11

acts with E.E.K.  Therefore, E.E.K.'s SANE exam would not be relevant to the charges related to A.L.K. and it cannot be exculpatory or impeaching.

In order to dismiss charges under CrR 8.3(b), the evidence that was improperly disclosed must be exculpatory or impeaching.  *Strickler*, 527 U.S. at 281-82.  There was no exculpatory or impeaching evidence as to the charges related to A.L.K.  Therefore, dismissal under CrR 8.3(b) was improper and the trial court abused its discretion.  Accordingly, we reverse the portion of the trial court's order dismissing the charges related to A.L.K and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

WORSWICK, J.