# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56761-0-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| RONALD RAY BARTON, JR. | |
| Respondent. | |

MAXA, P.J. – Ronald Barton Jr. appeals his three second degree child rape convictions. He argues that the trial court abused its discretion when it failed to dismiss the charges under CrR 8.3(b) after the State failed to produce images of Instagram messages between Barton and the victim until after the jury was sworn and Barton had given his opening statement. He also asserts claims in a statement of additional grounds (SAG) and two supplemental SAGs.

Although the trial court found that the State committed misconduct, the court's exclusion of the Instagram images prevented any potential prejudice. Therefore, we hold that the trial court did not abuse its discretion when it denied Barton's CrR 8.3(b) motion to dismiss. We do not consider Barton's SAG claims because they rely on evidence outside the record or are too vague. Accordingly, we affirm Barton's convictions.

FACTS

*Background*

Barton is KMS's grandfather.  In the summer of 2021, 13-year-old KMS spent several weeks with Barton, his wife, and his mother at their home.

In September, KMS's stepmother discovered photographs and messages on a cell phone that was in KMS's purse.  The photographs and messages suggested that Barton and KMS had been engaging in sexually inappropriate behavior while KMS was staying with him.  After her stepmother confronted her with the material on her phone, KMS admitted that she and Barton had engaged in sexual activity.

KMS's stepmother reported the suspected sexual abuse, and KMS was interviewed by deputy Kevin Acdal.  Acdal also examined KMS's cell phone and reviewed the messages between KMS and Barton.  Some of these messages contained discussions of a sexual nature and pictures.

Acdal retained KMS's cell phone and placed it into evidence.  KMS's cell phone was subjected to a cellular telephone forensic examination using a program known as Cellebrite, which extracts data from phones and other electronic devices.  Although the Cellebrite forensic examination revealed several naked photographs of KMS, it did not contain any of the Instagram communications between KMS and Barton because Instagram was a third-party platform that could not be accessed using Cellebrite.

The State charged Barton with three counts of second degree child rape.  The probable cause statement referenced and quoted some of the Instagram messages.

2

No. 56761-0-II

*Opening Statements*

The case proceeded to a jury trial. In the State's opening statement, the prosecutor described the testimony the State planned to present to the jury from KMS regarding her sexual relationship with Barton. The prosecutor told the jury that KMS's testimony alone was sufficient to convict Barton and that no corroboration of KMS's testimony was required in order to find Barton guilty. The prosecutor also commented that because of issues with the investigation in this case, the State might not be able to provide corroboration for all of the testimony regarding what KMS's stepmother found on KMS's cell phone.

In Barton's opening statement, he suggested that KMS's allegations were in retaliation for a disagreement and altercation that had happened between KMS's stepmother and Barton's wife at a family gathering shortly before the September disclosures. Barton acknowledged that messages proving a sexual relationship were alleged to have been found on KMS's phone and that KMS might testify about her communications with Barton.

> But Barton stated,
>
> The text messages on [KMS's] phone to [Barton's phone], with the sexually-explicit photographs where they discussed the sexual nature of their relationship? I would love to tell you, you get to see them. But they don't exist, either.
> . . . .
>
> The Pacific County Sheriff's Department used Cellebrite to forensically examine [KMS's] phone. There is no question that there were sexually-explicit images on her phone. That was found. There's no question that there are other photographs and other data. But in that 179-page forensic analysis document, what is strikingly missing: there are no text messages from [KMS] to Ron Barton. There are no text messages from Ron Barton to [KMS]. *There's absolutely no forensic evidence whatsoever to determine that any of these messages that will be described for you ever existed. They cannot be produced.*

1 Report of Proceedings (RP) at 178-79 (emphasis added).

3

Barton then commented that although law enforcement could have preserved the alleged messages in other ways, such as sending the cellular service provider a preservation letter and obtaining a search warrant for the phone records, these avenues never were pursued. Barton also emphasized other deficiencies in the investigation. For instance, Barton asserted that there was no evidence KMS had undergone a sexual assault examination, that the investigating officers never sought any DNA evidence, that the investigators did not examine the places where KMS alleged the sexual activity occurred, and that the police never attempted to examine KMS's or Barton's cell phone records to determine whether they could provide any corroborating evidence regarding where the assaults were alleged to have occurred.

*Recovery of Instagram Communications*

After the trial court released the jury for the day, the prosecutor met with KMS to prepare for her testimony. During this meeting, the prosecutor obtained KMS's cell phone. Using a password provided by KMS, the prosecutor was able access her Instagram account and locate Instagram messages between Barton and KMS. The prosecutor notified defense counsel that they had just recovered the Instagram messages.

*CrR 8.3(b) Motion to Dismiss*

The next morning, Barton moved to dismiss the case under CrR 8.3(b) due to governmental misconduct based on the recent disclosure of the Instagram messages. Barton characterized this late discovery as the State withholding evidence rather than discovering new evidence because the State was aware of the alleged Instagram messages and the phone had been in the State's possession since Barton was charged.

4

Barton asserted that he had relied on the absence of evidence of the Instagram messages in his opening statement when he told the jury that any Instagram evidence was never recovered and that this was important because part of the defense case theory was that the State had conducted an incomplete investigation. Barton further asserted that if the State was permitted to present the newly recovered Instagram images, he would appear to be dishonest or incompetent in light of the opening statement. In addition, Barton asserted that the State's failure to discover and disclose the Instagram messages impeded his ability to provide effective representation because he was unaware of what evidence there was against Barton.

The State responded that the existence of the Instagram evidence was established in the probable cause statement, which had been provided to Barton. Therefore, the Instagram messages were not a surprise and the State had complied with its discovery obligations. The State also argued that Barton could not establish prejudice.

The trial court found that the new evidence was distinct from the witness statements about the evidence and that the State should have disclosed the actual messages. The court concluded that this was an instance of discovery mismanagement that amounted to governmental misconduct because there was no reason the State could not have located these messages earlier. The court also concluded that the disclosure of the new evidence after opening statements had been made could be prejudicial because the focus of Barton's opening statement was the lack of corroborating evidence in the case.

The trial court characterized the State's actions as a "discovery violation." 1 RP at 209. However, the court concluded that neither a continuance nor dismissal of the charges was the appropriate remedy. Instead, the trial court chose the "extraordinary remedy" of excluding the

5

Instagram messages from evidence. 1 RP at 209. The court stated that Barton could not claim that the messages did not exist, but he could argue that no messages were placed into evidence.

*Trial Testimony*

At trial, KMS testified about the sexual contact that occurred with Barton. She stated that Barton had provided her with methamphetamine, marijuana, and alcohol and that they engaged in sexual relations on several occasions. KMS, her stepmother, and Acdal all testified about KMS's disclosures and the content of the Instagram messages between Barton and KMS that were found on KMS's cell phone. KMS confirmed that some of the messages and pictures on her cell phone were of a sexual nature and were inappropriate.

Acdal also testified that the Cellebrite report did not contain any information about the Instagram messages. And a certified Cellebrite operator testified that Cellebrite extracts data from cell phones but that Cellebrite cannot extract data from third-party applications such as Instagram. None of the witnesses testified about the recent recovery of the Instagram messages, and the State did not present the recovered images of these messages as exhibits.

Acdal further testified that shortly after her September 2021 disclosures, KMS submitted to a hair follicle test to test for the presence of methamphetamine and that this test was negative. Acdal testified that he did not know how long methamphetamine would be discoverable within a hair follicle. Barton did not present any evidence regarding how long methamphetamine would appear in a hair follicle.

*Closing Arguments*

In closing argument, the prosecutor described the messages between Barton and KMS. The prosecutor acknowledged that although the Cellebrite process did not extract any

6

information about these messages from KMS's phone, KMS, her stepmother, and Acdal all had testified about the content of the messages. The prosecutor acknowledged various deficits regarding the investigation in this case but argued that these deficits did not mean that KMS was not sexually assaulted by Barton.

In his closing argument, Barton emphasized that this case depended on KMS's credibility. He argued that when evaluating KMS's credibility, the jury should consider the lack of forensic or medical evidence, the various deficits in the investigation, the fact KMS's disclosures followed on the heels of a family dispute, and the fact KMS could have obtained information about sex and drugs from other sources. Barton also discussed the Cellebrite report and asserted that the report did not implicate him or connect him to KMS in any way.

Barton argued that the State had taken the Instagram messages out of context. He asserted that the only way the messages could be probative is if the jury had the ability to examine and evaluate them in context, but this was not possible because the State had not presented any records from Instagram.

Barton concluded,

> [The State is] wanting you to convict my client based on messages that maybe other people saw or have testified about that were taken out of context, but then the evidence stops. Rather than saying, "Here is the evidence, you can take a look at it for yourselves," make no mistake, what the State is saying to you right now is wink, wink, nod, nod. You can take our word for it. That's not sufficient. The evidence has to be provided to you for your consideration so you can assess: what was the meaning of that communication? Was it actually from Ron Barton? Was it actually to [KMS], or vice versa? What does that picture actually show? What does the message actually say? When was it sent? None of that evidence is here, it simply wasn't obtained.

2 RP at 681-82.

The jury convicted Barton of three counts of second degree child rape. Barton appeals his convictions.

ANALYSIS

A.     CRR 8.3(b) MOTION TO DISMISS

Barton argues that the trial court abused its discretion when it denied his motion to dismiss his charges under CrR 8.3(b) based on the State's misconduct and instead sanctioned the State by excluding the Instagram messages from evidence. We disagree.

1.     Legal Principles

CrR 8.3(b) allows the trial court to dismiss a criminal prosecution due to "governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Here, the trial court found that the State engaged in misconduct. However, to obtain a dismissal, the defendant must show by a preponderance of the evidence that the governmental misconduct resulted in actual prejudice affecting his right to a fair trial. *State v. Salgado-Mendoza*, 189 Wn.2d 420, 431-32, 403 P.3d 45 (2017). Dismissal pursuant to CrR 8.3(b) is an extraordinary remedy and should be ordered only as a last resort. *State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003).

We review a trial court's decision on a CrR 8.3(b) motion for abuse of discretion. *Salgado-Mendoza*, 189 Wn.2d at 427. The trial court abuses its discretion by making a decision that is manifestly unreasonable or based on untenable grounds. *Id.* However, the trial court's discretion must be exercised in light of the fact that dismissal is an extraordinary remedy. *See State v. Rohrich*, 149 Wn.2d 647, 653, 71 P.3d 638 (2003).

2.   No Abuse of Discretion

Barton argues that the State's misconduct prejudiced him because the Instagram messages were disclosed after he had prepared his defense and presented his opening statement. Barton claims that the late disclosure impeded his ability to prepare and present his defense.

Barton may have been able to show prejudice if the Instagram messages had been admitted into evidence. However, the trial court did not allow the State to introduce this evidence. This ruling placed Barton in the exact position he would have been in if the messages had not been recovered. No previously undisclosed evidence was presented to the jury, and the record demonstrates that Barton was able to present his defense and to make closing arguments that were fully consistent with his opening statement.

Barton also may have been able to show prejudice if he had no knowledge of the Instagram messages before the trial started. But Barton knew the messages existed – they were quoted in the probable cause statement. He also knew that they existed because he had participated in them. And he was aware that the existence of and content of the messages would be established by testimony from KMS, her stepmother, and Acdal. Therefore, he was able to prepare to address this evidence at trial.

Barton also contends that the delayed disclosure prejudiced pretrial negotiations. But there is nothing in the record about any pretrial negotiations.

The trial court's choice of remedy prevented any potential prejudice. Accordingly, we hold that the trial court did not abuse its discretion when it denied Barton's motion to dismiss the charges.

B.      SAG CLAIMS

In his SAG, Barton asserts that his defense counsel provided ineffective assistance by failing to call an expert to testify about how long a hair follicle will test positive for the presence of methamphetamine.  He contends that an expert would have testified that a hair follicle test can detect methamphetamine and its metabolites for 90 days after the last use.  And he asserts that the absence of methamphetamine in KMS's hair follicle would have undermined her credibility because the test was conducted within 90 days of KMS's alleged methamphetamine use.

But the record does not contain any information regarding how an expert would have testified.  Because this claim is based on matters outside the record on appeal, we cannot consider it.  *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).  Issues based on matters that are outside of the appellate record are more properly raised in a personal restraint petition.  *Id*.

Barton asserts that the certified Cellebrite operator was the subject of an internal affairs investigation at the time of his testimony and that this information was not disclosed to Barton in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  Again, the record on appeal does not contain any information regarding his claim, so we cannot consider it.  *Alvarado*, 164 Wn.2d at 569.

In his first supplemental SAG, Barton generally asserts that the trial court lacked jurisdiction and that his due process and equal protection rights were violated.  But he does not explain the basis for these claims.  RAP 10.10(c) requires that the appellant state the "nature and occurrence of alleged errors."  Because these SAG claims are too vague to properly inform us of the nature and occurrence of the claimed errors, we cannot review them.

No. 56761-0-II

In his second supplemental SAG, Barton asserts that his appellate counsel's representation has been deficient on several grounds. He supports this argument with a letter from his appellate counsel. Because this claim is based on matters outside the record on appeal, we cannot consider it. *Alvarado*, 164 Wn.2d at 569.

CONCLUSION

We affirm Barton's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

VELJACIC, J.

PRICE, J.

11