# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　　　v.<br><br>TROY DANIEL SCOTT,<br><br>　　　　　　　Appellant. | No. 76757-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 4, 2019 |

APPELWICK, C.J. — Scott appeals his convictions for possession of a stolen vehicle and possession of a controlled substance. He argues that the trial court violated his rights to trial by jury and a unanimous verdict by allowing an alternate juror to enter the jury room during deliberations. He contends that defects in the trial record deprived him of his right to appeal. And, he asserts that the criminal filing fee and DNA collection fee should be stricken from his judgment and sentence. We affirm his convictions, but remand to the trial court to strike the criminal filing fee and DNA collection fee.

## FACTS

On June 29, 2016, Richard McBride discovered that his 1998 red Kawasaki Ninja motorcycle was missing from his grandmother's house in Bellingham. That

evening, he called the police to report the motorcycle as stolen. McBride told the police that he had drained the motorcycle's oil and removed the battery. He also told them that the motorcycle had an ignition lock, which would prevent the steering column from being turned on unless it was unlocked.

On July 3, 2016, Officer Todd Bridgman was parked in a parking lot at the Thomas Lake Center in Mill Creek. While parked, he noticed a motorcycle pull into the parking lot. It struck him as unusual that the driver, Troy Scott, had a dirt bike style helmet despite riding a street bike. After Scott and his passenger got off the motorcycle, Bridgman ran the motorcycle's license plate. When he received the return on the plate, he saw that its registration had expired in 2013. There was a note on the return that the plate had been replaced by a new one.

Once Scott returned to the motorcycle, Bridgman asked him about the status of his license plate and registration. Scott indicated that he had recently bought the motorcycle, and explained that "it was some type of bank repossession thing." He stated that the motorcycle was not stolen. He also explained that the motorcycle's ignition had been damaged during the repossession. Bridgman had not mentioned the possibility that the motorcycle was stolen.

As Scott was talking to Bridgman, the dispatcher notified him that the motorcycle had been reported stolen out of Bellingham. Bridgman then told Scott that the motorcycle had been reported stolen, and that he was going to detain him. Scott became very agitated and did not cooperate with Bridgman's verbal commands. He ran from Bridgman, who eventually tackled Scott to the ground and placed him in handcuffs. Bridgman searched Scott and found a plastic

"baggie" in his front pocket. The baggie contained a white crystalline substance that Bridgman suspected was methamphetamine.

After Scott's arrest, Bridgman asked him how he acquired the motorcycle. Scott told Bridgman that he had bought the motorcycle from a man named Dennis in Lake Stevens. He stated that Dennis had written up a bill of sale for the purchase of the motorcycle, but that he had left the documents relating to the purchase at home. Scott also explained that the motorcycle's key had been lost, so Dennis had punched the ignition.

The State charged Scott with possession of a stolen vehicle while on community custody, and possession of a controlled substance while on community custody. At trial, the State called four witnesses, including McBride.

At the end of closing arguments, the trial court selected juror 7 as an alternate juror. It directed juror 7 to remain in the courtroom while the jury exited the courtroom to begin deliberations in the jury room. The court then instructed juror 7 as follows:

> If for any reason another juror becomes ill or for other reasons unable to proceed, you will be substituted in for that juror to deliberate with the jury. For that reason, you will remain under the Court's prior instructions to not discuss the case with the other jurors, not discuss the case with anyone else. . . .
>
> You'll not be required to remain here in the courthouse so long as you can leave us a phone number where we're able to get ahold of you between the hours of 9:00 a.m. and 4:30 p.m.

It allowed juror 7 to leave, and stated, "My law clerk is going to in just a minute assist in getting any belongings you might have out of the jury deliberation room and getting a phone number for you." Juror 7 then exited the courtroom.

3

The jury found Scott guilty as charged. Scott appealed.

After Scott appealed, the court reporter transcribing the case discovered that her stenotype machine had malfunctioned during trial. As a result, the machine failed to record McBride's testimony. Trial counsel for the State and Scott prepared and signed an agreed report of proceedings reconstructing McBride's testimony under RAP 9.4.

## DISCUSSION

Scott makes three arguments. First, he argues that the trial court violated his rights to trial by jury and a unanimous verdict by allowing an alternate juror to enter the jury room during deliberations. Second, he argues that defects in the trial record deprived him of his right to appeal. Third, he argues that the criminal filing fee and DNA (deoxyriboneucleic acid) collection fee should be stricken from his judgment and sentence.

I. Presence of Alternate Juror During Deliberations

Scott argues first that the trial court violated his rights to trial by jury and a unanimous verdict by allowing an alternate juror into the jury room during deliberations.

The State notes that Scott failed to object when the trial court allowed juror 7 to exit the courtroom to obtain personal belongings. Thus, he raises the issue for the first time on appeal. Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a). However, an appellant may raise for the first time on appeal a manifest error affecting a constitutional right. RAP 2.5(a)(3).

Scott relies on State v. Cuzick, 85 Wn.2d 146, 530 P.2d 288 (1975). There, the prosecutor asked the trial court to permit the alternate juror to attend the jury's deliberations in case one of the regular jurors became ill. Id. at 147. Cuzick's attorney did not object. Id. The court instructed the alternate juror to retire with the jury, but to not participate in the discussions. Id. After the verdict was entered, Cuzick appealed, arguing, in part, that the presence of the alternate juror during the jury's discussions was prejudicial as a matter of law. Id.

On appeal, the State Supreme Court noted that "there can be no question that [a jury] must reach its decision in private, free from outside influence." Id. at 149. It noted that "[o]bjection to deviation from the authorized number of jurors has been held nonwaivable." Id. Even if waiver was allowed, the court found that "the importance of the jury secrecy principles affected is such that it can only be made informedly and affirmatively by the defendant himself," not implied from his counsel's silence. Id.

Assuming that the alternate juror substantially followed the trial court's instructions, the court nonetheless held that "prejudice will be presumed to flow from a substantial intrusion of an unauthorized person into the jury room unless 'it affirmatively appears that there was not and could not have been any prejudice.'" Id. at 149-50 (quoting State v. Carroll, 119 Wash. 623, 624, 206 P. 563 (1922)). Where the intrusion involves the visible presence of a nonjuror for the full length of deliberations, the court found that "the presumption of prejudice clearly has not been so conclusively defeated." Id. Thus, it held that the alternate juror's presence was reversible error. Id. at 151.

The <u>Cuzick</u> court did not conduct a RAP 2.5(a) analysis in determining whether it could reach the issue of the alternate juror's presence during deliberations. It clearly stated that the alleged error was nonwaivable, or that it could be raised for the first time on appeal. <u>See</u> <u>Cuzick</u>, 85 Wn.2d at 149.

But, even assuming that RAP 2.5 allows us to reach the issue here, <u>Cuzick</u> does not provide Scott the relief he seeks. Unlike <u>Cuzick</u>, the record here does not definitively show juror 7's presence during deliberations. According to the trial transcript, the jury was dismissed to the jury room to begin deliberations. The court then asked juror 7 to remain for instructions. It instructed juror 7 and then told juror 7, "My law clerk is going to in just a minute assist in getting any belongings you might have out of the jury deliberation room and getting a phone number for you." Juror 7 then exited the courtroom. The record does not affirm that either the law clerk or juror 7 in fact entered the jury room.

Because Scott has failed to demonstrate that juror 7 was actually present during deliberations, he has failed to demonstrate prejudice flowing from a substantial intrusion of an unauthorized person into the jury room. Accordingly, Scott has not shown that the trial court violated his constitutional rights to trial by jury and a unanimous verdict.

II.    <u>Sufficiency of Trial Record</u>

Scott argues second that defects in the trial record deprived him of his right to appeal.

A criminal defendant is constitutionally entitled to a record of sufficient completeness for appellate review of potential errors. <u>State v. Tilton</u>, 149 Wn.2d

775, 781, 72 P.3d 735 (2003). However, a complete verbatim transcript is not required. State v. Classen, 143 Wn. App. 45, 54, 176 P.3d 582 (2008). In the absence of a complete record, the appellant may prepare a narrative report of proceedings under RAP 9.3, or an agreed report of proceedings under RAP 9.4. Tilton, 149 Wn.2d at 782.

In reviewing whether the record is sufficient to allow review, we consider the following factors:

> (1) whether all or only part of the trial record is missing or reconstructed, (2) the importance of the missing portion to review the issues raised on appeal, (3) the adequacy of the reconstructed record to permit appellate review, and (4) the degree of resultant prejudice from the missing or reconstructed record, if any, to the defendant.

Classen, 143 Wn. App. at 57. "The absence of a portion of the record is not reversible error unless the defendant can demonstrate prejudice." State v. Burton, 165 Wn. App. 866, 883, 269 P.3d 337 (2012).

Scott contends that the agreed report of proceedings is inadequate to afford him review regarding issues related to a purported bill of sale marked as exhibit 10. The reconstructed testimony on exhibit 10 states the following:

> 42. The state asked Mr. McBride if he recognized a document that purported to be a bill of sale for his stolen motorcycle (believed to be marked as exhibit #10). Mr. McBride stated that he had seen a copy of the document after his motorcycle was stolen, but that he did not create the document and that it was not his signature on the document.
>
> a. When the State asked Mr. McBrode about exhibit 10, the State did not describe it as a bill of sale for the stolen motorcycle. The exhibit was not published to the jury. The State asked Mr. McBride if he had made a Bill of Sale for his motorcycle, and he said no.

43. Defense objected either during or after Mr. McBride's response.

44. The jury was excused.

45. The state informed the court that the reasoning for asking about this purported bill of sale was that the state had received this document from a prior defense attorney who represented the defendant before counsel at trial, and the state expected that defense may try and offer the purported bill of sale through one of its witnesses. Given that the document purported to be a bill of sale between Mr. McBride and the defendant, the state intended to ask about its authenticity, expecting Mr. McBride to testify that he [sic] it was not a document he created and that it was not his signature on the document.

46. Defense informed the state and the court that they did not intend to offer the purported bill of sale or otherwise ask any witnesses about it.

47. Based on the defense representation about the purported bill of sale, the state then said that it would not ask any further questions about the purported bill of sale (exhibit 10) and that the state would also not be offering exhibit 10.

48. Defense made a further objection during argument that the paper copy of the purported bill of sale (exhibit 10) had been observed by the jury and that the bell had been rung. Defense argued that this shifted the burden to the defendant because the jury now knows something exists and they will wonder why we the defense didn't introduce it. Additional details of oral argument cannot be reconstructed.

49. The jury re-entered the courtroom and the state proceeded with additional questioning of witness McBride not related to exhibit 10.

Scott argues that the reconstructed record is inconsistent as to whether the jury saw the purported bill of sale. He points out that the handwritten note stated that the bill of sale was not published to the jury. But, according to paragraph 48, defense counsel argued that the jury had observed the document. He also

emphasizes the following statement in paragraph 48, "Additional details of oral argument cannot be reconstructed." Scott compares this case to State v. Larson, 62 Wn.2d 64, 381 P.2d 120 (1963), and Tilton.

In Larson, the court reporter's notes of the court proceedings were lost, and a verbatim statement of facts could not be furnished. 62 Wn.2d at 65. Larson's trial counsel had withdrawn by that time. Id. The State moved the trial court to furnish Larson with a narrative statement of facts consisting solely of the trial court's notes. Id. Larson's appellate counsel argued that he could not intelligently test the sufficiency of the statement of facts because he did not participate at trial. Id. He also asserted that it was "impossible for him to assign adequate errors without the verbatim record of the trial court proceedings." Id.

On appeal, Larson argued that he was denied due process stemming from the inadequate trial record. Id. at 66. The State Supreme Court found that because Larson's appellate counsel did not represent him at trial, "he was unable to determine satisfactorily what errors to assign for the purpose of obtaining an adequate review on appeal." Id. at 67. In regard to the errors that had been assigned, it found that he was "unable to test the 'sufficiency of completeness' of the narrative statement of facts." Id. The court held that if the reporter's notes were not found within 30 days, the verdict must be reversed and Larson granted a new trial. Id.

In Tilton, the court reporter forgot to turn on the tape recorder until 36 minutes into Tilton's testimony. 149 Wn.2d at 779. Before sentencing, his trial attorney withdrew and another attorney was substituted as counsel. Id. at 780.

9

After sentencing, the prosecutor moved to reconstruct the missing record. Id. The trial court ordered the prosecutor to prepare an affidavit of his recollections of Tilton's testimony, and forward it to Tilton's trial counsel to review and submit his own affidavit. Id. Tilton's trial counsel stated in his affidavit that he had no independent recollection of Tilton's testimony and no notes. Id. He also objected to the reconstruction. Id. The trial court found that there were no conflicts of consequence in the affidavits, the affidavits should be allowed to reconstruct the record, and Tilton was not prejudiced by the failure to record his testimony. Id. at 781.

The State Supreme Court disagreed, finding the case similar to Larson. Id. at 783, 785. It noted that Tilton's trial attorney had no notes and no independent recollection of Tilton's testimony, and his appellate counsel was not present at trial. Id. at 783. Therefore, his appellate counsel was unable to judge the completeness of the reconstructed record, determine appealable issues, or support appealable issues that depended on Tilton's testimony. Id. The court also found that the portion of the record missing was of critical importance to Tilton's appeal. Id. Specifically, it was "impossible using the reconstructed record to establish the elements of an ineffective assistance of counsel claim based on trial counsel's failure to raise voluntary intoxication or diminished capacity as defenses," despite significant evidence suggesting the defenses were viable. Id.

Here, unlike Larson, the entire trial transcript was not lost. Only McBride's testimony was lost. And, unlike both Larson and Tilton, Scott's trial counsel signed the agreed report of proceedings reconstructing McBride's testimony. Scott

10

argues only that the reconstructed report of proceedings is deficient because it is inconsistent on an important fact: stating exhibit 10 was not published to the jury and stating that the jury observed the exhibit.

Specifically, Scott argues that he is unable to pursue (1) a claim of error by the trial court for its "rulings regarding exhibit 10," (2) a claim of error by the prosecutor for "tainting the jury with exhibit 10," or (3) a claim of ineffective assistance of counsel by his trial attorney for "not seeking an appropriate remedy in light of exhibit 10." He bases these claims on the possibility that the State's examination of McBride resulted in responses that made "apparent exhibit 10 was a purported bill of sale for the motorcycle, which McBride denied preparing." He states that this would have allowed speculation that Scott had attempted to manufacture evidence for his defense.

Exhibit 10 purported to be a bill of sale between McBride and Scott. McBride was the first witness to testify at Scott's trial. During his testimony, the jury observed the prosecutor ask McBride if he had made a bill of sale for the motorcycle. McBride said no. The jury also observed the prosecutor ask McBride if "he recognized a document." The prosecutor did not describe the document as a bill of sale for the stolen motorcycle. McBride stated that "he had seen a copy of the document after his motorcycle was stolen, but that he did not create the document and that it was not his signature on the document." Scott's trial counsel objected either during or after McBride's response. After the jury was excused, the prosecutor stated that exhibit 10 purported to be a bill of sale between McBride and Scott. The exhibit was never admitted into evidence or published to the jury.

The trial court did not rule on counsel's objection, because the State indicated it would not offer exhibit 10 into evidence. Scott's trial counsel sought no other ruling. Nothing in the reconstructed record shows that the jury saw the contents of the exhibit.

Later, Officer Bridgman testified that he recalled Scott telling him that he had bought the motorcycle from someone named Dennis in Lake Stevens. Scott told him that Dennis had written up a bill of sale for the motorcycle.

Scott called one witness, a man named Dennis Porter from Lake Stevens. Porter stated that he was Scott's acquaintance, and that the day before Scott's arrest, he saw a motorcycle on his property. He understood that the motorcycle was not drivable. He observed Scott and another individual looking over the motorcycle and chatting. He also observed an exchange of money. He denied selling the motorcycle to Scott, and denied drafting a bill of sale for the motorcycle. He also stated that there were three other people named Dennis residing at his house at the time. Scott's trial counsel did not introduce a bill of sale into evidence.

Scott argues first that he is unable to pursue a claim of error by the trial court for its rulings regarding exhibit 10. But, nothing in the record suggests that the trial court made any rulings regarding the exhibit. The exhibit was not introduced into evidence. No ruling was required on the original objection since the State agreed not to offer the exhibit. And, Scott's trial counsel did not move for a limiting instruction after the State asked McBride about the exhibit. As a result, there was no motion for the court to rule on.

12

Scott argues second that he is unable to pursue a claim of misconduct by the prosecutor for "tainting the jury with exhibit 10." However, Scott fails to articulate how the prosecutor might have engaged in the suggested misconduct. Scott's previous trial counsel provided the prosecutor with a copy of the purported bill of sale. He does not point to a motion in limine preventing the prosecutor from asking about the exhibit, nor allege that the prosecutor violated such an order. Bridgman would later testify that Scott told him he had a bill of sale. The prosecutor anticipated that Scott might try to introduce the exhibit through one of its witnesses. And, when assured that Scott would not be introducing the exhibit, the prosecutor readily agreed not to ask further questions about the exhibit or offer it into evidence. Nothing in the record suggests an improper motive or conduct by the prosecutor that might have been fleshed out by further details.

Scott argues third that he is unable to pursue a claim of ineffective assistance of counsel by his trial attorney "for not seeking an appropriate remedy in light of exhibit 10." Representation is not deficient if a trial counsel's conduct can be characterized as trial strategy or tactics. State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). The record shows that Scott's trial counsel did not seek a limiting instruction in light of the State's questions about the exhibit. Scott's trial counsel argued that "the bell had been rung" as to the exhibit, a phrase commonly evidencing a belief that the damage was done and could not be undone. Scott's trial counsel does not suggest in the reconstructed record that any impediment existed to seeking a limiting instruction. But, it is unclear that a curative instruction would have been effective in light of Bridgman's later testimony

13

about a bill of sale between Scott and "Dennis," without also seeking to exclude that testimony. The decision to not request a limiting instruction could have been a tactical decision to not highlight the State's questions or McBride's responses about the exhibit. Tactical decisions cannot be the basis of an ineffective assistance of counsel claim. Id.

If Scott's trial counsel thought he would be harmed by the State's questions about exhibit 10, she could have precluded this issue pretrial. Scott's previous trial counsel provided the State with a copy of the purported bill of sale. Thus, his trial counsel should have known about the exhibit. His counsel could have filed a motion in limine to prevent the State from asking about the exhibit. The record does not show that Scott's trial counsel attempted to do so. His counsel's failure to file a motion in limine is not dependent on details in the reconstructed record. However, Scott does not argue on appeal that this failure constituted ineffective assistance of counsel. He notes that his trial counsel could not recall all the details regarding her argument about exhibit 10, but he does not argue that her decision to sign the agreed report of proceedings constituted ineffective assistance of counsel.

The harm Scott alleges is that the jury may have been led to speculate that he had manufactured evidence during the examination of McBride. Unlike Tilton, the record does not support an inference, let alone a conclusion, that but for missing details in the reconstructed portion of the record, the cause of the alleged harm was trial court error, prosecutor misconduct, or ineffective trial counsel during McBride's examination. Speculation is not a basis for ordering a new trial.

14

Accordingly, Scott has failed to demonstrate that the reconstructed record prejudiced him or deprived him of his right to appeal.

III.     Legal Financial Obligations

Scott argues last that his criminal filing fee and DNA collection fee should be stricken from his judgment and sentence. He relies on House Bill 1783[1] and State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018).

In Ramirez, the State Supreme Court held that House Bill 1783 applies prospectively to cases on appeal. 191 Wn.2d at 747. House Bill 1783 amended RCW 36.18.020(2)(h) to prohibit courts from imposing the $200 filing fee on defendants who are indigent under RCW 10.101.010(3)(a)-(c). LAWS OF 2018, ch. 269, § 17(2)(h). It also amended RCW 43.43.7541, providing that the $100 DNA collection fee is not mandatory where "the state has previously collected the offender's DNA as a result of a previous conviction." Id. § 18.

A person is indigent if he receives an annual income after taxes of 125 percent or less of the current federally established poverty level. RCW 10.101.010(3)(c). Here, Scott claimed indigency and moved the trial court for an order allowing him to seek review of his judgment and sentence at public expense. He attached a financial statement to his motion stating that he was unemployed. He did not list any income in the statement. The trial court granted his motion. This sufficiently demonstrates Scott's indigency.

---

[1] ENGROSSED SUBSTITUTE H.B. 1783, §§ 17(2)(h), 18, 65th Leg., Reg. Sess. (Wash. 2018) (House Bill 1783).

And, the State concedes that it has previously collected Scott's DNA as a result of a prior conviction. Accordingly, we remand to the trial court to strike the criminal filing fee and DNA collection fee from Scott's judgment and sentence.

We affirm Scott's convictions, but remand to the trial court to strike the criminal filing fee and DNA collection fee.

_Appelwick, C.J._

WE CONCUR: