[Nos. 46994-1-I; 46995-9-I.   Division One.   September 17, 2001.]

THE STATE OF WASHINGTON, *Appellant*, v. RICKY RAY WILSON, ET AL., *Respondents*.

---

*Norm Maleng, Prosecuting Attorney, Lee D. Yates, Senior Deputy,* and *Ann Summers, Deputy,* for appellant.

*David B. Koch* (of *Nielsen, Broman & Associates, P.L.L.C.*) and *Gregory C. Link* (of *Washington Appellate Project*), for respondents.

APPELWICK, J. — The trial court dismissed the criminal charges against Ricky Ray Wilson and Rhett Butler Irons under CrR 8.3(b) based on the prosecutor's repeated failure to secure or arrange an interview between the defendants' counsel and one of the victims. Although the prosecutor assured the trial court that he would arrange the interview with the victim, his agreement did not amount to a legal obligation to ensure that the interview would in fact take place or an obligation to relieve defense counsel of their own responsibility. The prosecutor took reasonable steps to

arrange the interview. The witness had the right to refuse the interview. The prosecutor's inability to secure the interview did not amount to arbitrary action or governmental misconduct under CrR 8.3. We reverse the order of dismissal.

## FACTS

The State charged Ricky Ray Wilson with robbery in the second degree and Rhett Butler Irons with the crime of attempted robbery in the second degree. The Certifications for Determination of Probable Cause alleged that Wilson approached the victims and told them he had a gun. He poked a hard object into the left side of 15-year-old victim Jacob Paul, demanded his wallet, and took $20. Irons assisted Wilson in the robbery by searching the pockets of a different victim.

This consolidated case first appeared before Presiding King County Superior Court Judge Michael Spearman on May 18, 2000. At that time, counsel for Wilson told Judge Spearman that his investigator had not been able to interview Jacob Paul. The prosecutor informed Judge Spearman that, despite many attempts to contact Paul's family, an interview could not be arranged because the victim's mother had been uncooperative. Counsel for Wilson and Irons then made a motion to dismiss with prejudice. The trial court denied the motion to dismiss, but noted that the matter could be revisited when the case went to trial the following week. In denying the motion to dismiss, the court ordered the State to arrange the interview by the close of business on May 19, 2000. The State agreed to do so, but the interview did not occur.

On the morning of May 24, 2000, Wilson and Irons renewed their motions to dismiss, citing their inability to interview Paul. The court reserved ruling on the motions, and ordered the State to provide an interview by 1:30 P.M. that afternoon or the case would be dismissed. The State again agreed to do so.

After the morning hearing, the prosecutor went to Paul's school, and learned that he was at home. The prosecutor stated he telephoned defense counsel, both of whom were in downtown Seattle, shortly before 1:00 P.M., indicating Paul was available for an interview in Shoreline or by telephone. Irons' attorney told the court it was impossible for her and her investigator to reach Shoreline and conduct the interview prior to 1:30 P.M.

The trial judge stated that the witness had refused to cooperate and that the defendants were "entitled" to an interview with Paul. The trial court dismissed the case with prejudice under CrR 8.3(b), apparently because the State had not provided the in-person interview. The trial court did not enter any written reasons to support its order.

The State appeals.

## ANALYSIS

■ CrR 8.3(b) allows a court to dismiss a case:

**On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reason in a written order.

Under the express terms of the rule, the court must find 1) that the prosecution engaged in arbitrary action or misconduct; and 2) that the defendant would be prejudiced. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). Simple mismanagement may equate to governmental misconduct. *Michielli*, 132 Wn.2d at 239-40. The rule does not require express factual findings, but rather requires the trial court to state its reasons in a written order.

■ A trial court's power to dismiss charges is reviewable under the manifest abuse of discretion standard. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable

grounds, or for untenable reasons." *Blackwell*, 120 Wn.2d at 830 (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

As an initial matter, respondents claim that the State is raising a new issue on appeal by arguing that the trial court improperly faulted the prosecutor for failing to fulfill an obligation that the prosecutor was not legally required to do, an argument not explicitly raised by the prosecutor below. Their contention has no merit. The prosecutor objected to the dismissal order below, essentially arguing that he did not engage in misconduct or mismanagement. We find the prosecutor's objection to the order of dismissal under CrR 8.3 sufficient to preserve the State's present argument that the court improperly found "misconduct."

The State claims that under the discovery rules, the State was only required to disclose the names, addresses, and written and oral statements of the witnesses to the defense. CrR 4.7(a)(1)(i). As the defendant has no absolute right to interview potential State witnesses, *see State v. Hofstetter*, 75 Wn. App. 390, 397, 878 P.2d 474, *review denied*, 125 Wn.2d 1012 (1994), the State faults the trial court for placing an affirmative obligation upon the State to produce Paul for an interview.

Relying on *State v. Sherman*, 59 Wn. App. 763, 801 P.2d 274 (1990), the respondents claim that whether the State was legally required to perform an action is irrelevant as long as the prosecutor agrees to perform the act upon order of the court. We disagree.

In *Sherman*, this court affirmed the dismissal of theft charges where the State failed to present discovery it had agreed to provide the defendant. The prosecutor agreed on April 14 to provide the defendant a witness list and all records submitted by the defendant's employer to the Internal Revenue Service (IRS). One day after the trial was scheduled to begin, on July 11, the prosecutor made a motion to reconsider the omnibus order. The trial court denied the motion. The trial began nine days later and the prosecutor still had not provided the defendant with a

witness list or the IRS records. The trial court dismissed the action. In reviewing the dismissal, this court determined that the dismissal must have been based on CrR 8.3(b). *Sherman*, 59 Wn. App. at 766-67. The court stated:

> The fact that the State did not have physical control of the records, or that the defense did not independently attempt to locate the records, does not excuse the State's actions. The omnibus order, agreed to by the prosecution, specifically placed the onus on the State to give the IRS records to the defense prior to trial. The defense had no obligation to get the records from the State's complaining witness, because the State agreed to provide them. Further, although the material was not in the hands of the State, it was available to its chief witness, the employer. While the employer did unsuccessfully attempt to locate the records in his files, the State failed to follow up to ensure that the records were produced in a timely fashion. As a result, the employer did not request copies of the records from the IRS until the week before the hearing on the motion to dismiss, 10 days after trial was originally scheduled to start.

*Sherman*, 59 Wn. App. at 769.

We do not read *Sherman* to impose an obligation on the prosecutor in every instance where it is helpful to ensure a result or relieve the defendant of his or her own responsibility. In ruling on a defendant's dismissal motion based on the prosecutor's failure to fulfill the prosecutor's promise to assist defense counsel with discovery, the trial court should consider whether the prosecutor's failure to accomplish the task is excusable, and whether the prosecutor could have legally compelled or accomplished the act.

The prosecutor in *Sherman* could have compelled either the IRS or its chief witness to produce the documents. In this case, the prosecutor could not have compelled the witness to speak to defense counsel because the witness was under no obligation to talk to anyone outside of court.

Moreover, the *Sherman* decision was based in part on the prosecutor's unexcused conduct. *Sherman*, 59 Wn. App. at 769-70 (citing *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)). The prosecutor had three months to obtain and

produce the documents, but waited until he had less than two weeks before trial before making formal requests for the documents. Then, the prosecutor waited until the day after trial was to have begun to seek reconsideration of the omnibus order. *Sherman*, 59 Wn. App. at 768. At that point, it was too late for the defense to obtain production of the documents through their own effort.

The prosecutor here had already been trying to assist in arranging the witness for an interview, but had been met with resistance. It was not until May 18 that the court directed the prosecutor and the prosecutor agreed to arrange the interview by close of business the next day. The prosecutor took reasonable steps to ensure that the victim would meet with defense counsel but again met the same resistance as the defense did from the witness. ˙

Moreover, the defense did not entirely rely on the prosecution to set up the interview. The defense made their own efforts to interview the witness. Their failure to secure an interview was not due to their reliance on the prosecutor's promise, but rather the witness's refusal to speak to the defense.

We further find that defense counsel's refusal to interview the witness at his home or by telephone was unreasonable, even if it meant a slight delay in the start of the afternoon hearings. On the morning of trial, the court again ordered the prosecutor to make the witness available by 1:30 P.M. that afternoon. The defense did not request and the trial court did not order the prosecutor to arrange the interview of the witness at a certain place. In light of the extremely short time, defense counsel should have stood ready to interview the witness. It is not unreasonable to presume that the trial court would have accommodated the effects of its earlier order.

We conclude that the prosecutor's failure to secure an interview between defense counsel and a witness is not misconduct, even if the prosecutor agrees to arrange an interview. The interview did not occur because the witness refused to speak to defense counsel. It is not prosecutorial

misconduct when a prosecutor fails to satisfy a promise that cannot possibly and legally be accomplished through the prosecutor's efforts.

Reversed.

AGID, C.J., and BECKER, J., concur.

Reconsideration denied November 7, 2001.

Review granted at 146 Wn.2d 1008 (2002).