## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57653-8-II |
| Appellant, | |
| v. | |
| ALEXANDRIA NICOLE BLAKEMAN, | UNPUBLISHED OPINION |
| Respondent. | |

PRICE, J. — The superior court dismissed Alexandria N. Blakeman's charges for third degree assault due to prosecutorial mismanagement.  The superior court concluded that mismanagement occurred because the prosecution had undertaken an obligation to facilitate the interviews between the alleged victims and the defense but did not make reasonable efforts to do so before the discovery deadline in the omnibus order.  The State appeals.

We reverse.

### FACTS

I. BACKGROUND

In March 2021, Blakeman arrived at a mental health facility to receive care during a mental health episode.  While being triaged, Blakeman became combative with two nurses, kicking one of the nurses.  As security was attempting to restrain her, Blakeman appeared like she was going to spit at the nurses, so a second nurse put her hand up to block Blakeman's mouth.  Blakeman bit the second nurse's hand.

No. 57653-8-II

The second nurse called law enforcement, and an officer responded to the facility. The officer spoke with the nurses (hereinafter, the alleged victims) and determined there was probable cause to arrest Blakeman. Blakeman was not immediately charged.

II. BLAKEMAN'S ARRAIGNMENT

In April 2022, Blakeman was charged with two counts of third degree assault (one count for each alleged victim). Blakeman was arraigned on July 21 and entered a plea of not guilty. Following her arraignment, Blakeman remained out of custody. The superior court scheduled Blakeman's trial for October 10, which was 81 days from her arraignment date, 9 days short of CrR 3.3(b)'s 90-day "time to trial" deadline for out-of-custody defendants.

III. REQUESTS FOR WITNESS INTERVIEWS AND OMNIBUS APPLICATION

On August 15, the prosecutor sent its initial discovery to Blakeman's defense counsel with sworn statements from the alleged victims. About a week and a half later, on Friday, August 26, defense counsel e-mailed the prosecutor requesting interviews with the alleged victims.

The prosecuting attorney's office apparently used a standard form for defense counsel to request interviews. The interview request form included disclaimer language, which stated that the office would

> make reasonable efforts to schedule defense interviews with the State's witnesses *as a courtesy only*[, and] . . . [b]y providing th[e] form, the State [was] not agreeing that it [was] required to facilitate interviews.

Clerk's Papers (CP) at 21. Blakeman's form requested interviews with "All State's Witnesses on Witness List" and indicated that defense counsel was available on "Monday, Tuesday or Wednesday." CP at 21.

2

The prosecutor did not respond, but forwarded the e-mail (and interview request form) to a legal assistant and victim advocate for scheduling. The prosecutor then went on a prescheduled two-week vacation starting the following Tuesday, August 30, through September 12. Defense counsel e-mailed the prosecutor a second time on September 8, again requesting victim interviews and providing an omnibus application. In return, defense counsel received an automated e-mail reply that said the prosecutor was unavailable but a different prosecutor was covering and was available at a different e-mail address. Defense counsel did not forward their e-mail to the covering prosecutor.

Meanwhile, the victim advocate reached out to the alleged victims. One responded on September 9 with their availability for an interview. But because the related legal assistant was on bereavement leave and the prosecutor was on vacation, the interview was not scheduled.

When the prosecutor returned to the office on September 13, she responded to defense counsel's second e-mail and stated that she would "try to get the State's [omnibus] application prepared by end of week." CP at 8. The prosecutor ultimately signed and returned the defense's omnibus application on September 19, and it was filed with the superior court on September 20.

At the omnibus hearing that same day, the superior court granted several of the defense's requests in the omnibus application. Among the defense's requests was "all the names and addresses of Plaintiff's witnesses and their statements." CP at 4. The defense also requested, in request number 23, for the prosecution to "arrange prior to trial, for Defendant to interview . . . [a]ll witnesses . . . the State intends to call at trial." CP at 6. Whereas the superior court generally indicated that it granted the defense's requests by placing a check mark on a line to the left of the word "Granted" for those items, next to request number 23 (regarding the arrangement of

3

interviews), the prosecutor had added a typed modification that stated, "(Reserved for official request)," but there was no check mark from the superior court indicating that the request was granted. CP at 6. The omnibus order stated that the discovery disclosures deadline was "no later than 2 weeks prior to trial," which, with the October 10 trial date, would have been September 26. CP at 6.

Also on September 20, defense counsel again requested witness interviews. Later that day, the prosecutor personally reached out to the alleged victims to try and schedule interviews. During the call with one of the alleged victims, the prosecutor learned for the first time of the prior unsuccessful scheduling attempt. The prosecutor attempted contact with the other alleged victim as well, but they did not respond. No interviews were scheduled at that point.

The prosecutor was out of the office again from September 21 to 23.

IV. MOTION TO DISMISS AND DISMISSAL

By September 26, six days later, defense counsel had not yet received the prosecution's list of witnesses as required by the omnibus order. On the morning of September 28, two days past the discovery deadline, defense counsel moved to dismiss Blakeman's charges based on CrR 4.7(h)(7)(i)[1] and CrR 8.3(b)[2]. Defense counsel conceded in an attached declaration that at

---

[1] CrR 4.7(h)(7)(i) states that if a party has failed to comply with a discovery rule or an order, the superior court may "order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances."

[2] CrR 8.3(b) states that the superior court may, after notice and hearing, in the furtherance of justice, "dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

some previous point, the prosecutor had expressly told defense counsel that they had " 'the option of reaching out to [the alleged victims] [themselves] or filing motions to depose.' "[3] CP at 15. But defense counsel asserted the prosecutor had an obligation to facilitate the interviews of witnesses, "especially with alleged crime victims." CP at 16. Defense counsel contended that Blakeman was being forced to "choose between calling her case ready for trial knowing [defense counsel] cannot effectively represent her with no witness interviews or be compelled to waive speedy trial in hopes the State will comply with the Court's Orders in the future." CP at 16.

The same day, September 28, the prosecutor supplied its list of witnesses, which included only three witnesses; the two nurses/alleged victims and the law enforcement officer who responded on the day of the incident.

At a readiness hearing on the next day, September 29, defense counsel explained that the previous day the prosecutor had stated that because it had provided its witness list the night prior, the "interviews could finally be set." Verbatim Rep. of Proc. (VRP) (Sept. 29, 2022) at 11. Defense counsel stated that it would "not be prepared . . . if the [prosecution was going to] [confirm it was ready for trial]" that day and may have to continue the case if the motion to dismiss was not granted. VRP (Sept. 29, 2022) at 10. After discussion, the superior court ultimately said it would facilitate setting a hearing on the defense's motion to dismiss for the following week. Although the prosecutor and defense counsel both confirmed they were ready for the October 10 trial date,

---

[3] At a later hearing, the prosecutor stated she had told defense counsel on September 20 that he could reach out to the alleged victims to schedule interviews.

defense counsel again suggested it would need a continuance if the motion to dismiss was not granted.

On October 3, the scheduler for the prosecuting attorney's office informed defense counsel that she had set interviews with the alleged victims for later that week, on Friday, October 7 (which was three days before trial was scheduled to begin).

Two days later, on October 5, the hearing on Blakeman's motion to dismiss took place. Defense counsel argued that prosecutorial mismanagement had occurred. Defense counsel said the prosecutor's late submission of the witness list violated the superior court's omnibus order but also conceded the witness list "wasn't a surprise" when it included three witnesses the defense had expected—the two alleged victims and the law enforcement officer who responded to the emergency call. VRP (Oct. 5, 2022) at 9. Defense counsel explained that the October 10 trial date only left 9 days of cushion before Blakeman's 90-day time-for-trial deadline ran, and it would not be possible to proceed with a Monday, October 10 trial date with the victim interviews occurring Friday, October 7. Defense counsel explained that it intended to argue a "mental health defense, diminished capacity" and would need to procure an expert witness to be at the trial after the interviews took place. VRP (Oct. 5, 2022) at 15.

The prosecutor responded that the interviews were largely not set because of scheduling conflicts between the prosecution and defense and reasonable efforts had been made "within the time provided." VRP (Oct. 5, 2022) at 18. The prosecutor argued that dismissal was an extraordinary remedy and the superior court should allow a "good-cause continuance" instead. VRP (Oct. 5, 2022) at 18.

6

The superior court went through all of the requested items in the omnibus order and questioned whether those documents had been provided. The superior court then discussed the prosecution's history with attempting to schedule the witness interviews and determined there was mismanagement of the case and prejudice for Blakeman. Thereafter, the superior court orally granted Blakeman's motion to dismiss, and the trial date was stricken.

A few weeks later, on October 24, the prosecution moved to reconsider the decision to grant a dismissal of Blakeman's charges. The prosecution also challenged some findings of fact that the defense had proposed, including a finding that stated, "[T]he prosecuting attorney's deputies have a duty to make a reasonable effort to comply with a court's CrR 4.7 Omnibus Order before discovery any 'cut-off' dates noted in that Omnibus Order." CP at 19 (internal quotation marks omitted). The prosecution asserted that the omnibus order had not granted the defense's request for interviews to be completed by the omnibus deadline.

On October 26, the superior court held a hearing to consider the State's motion for reconsideration and to issue its written findings of fact and conclusions of law on its ruling. Among the State's arguments was that its interview form did not create an obligation to facilitate the interviews because it included disclaimer language. VRP (Oct. 26, 2022) at 45 (prosecutor said, "I also provided a copy that the entire form itself declares that the State has no discovery or Brady obligation to provide witness interviews. These are made as a courtesy only. Our willingness to attempt to schedule interviews is no guarantee that an interview will be able to be scheduled . . . .").

The superior court denied reconsideration, explaining that it believed the prosecuting attorney's office's procedures in this case were "not conducive to fulfilling the State's obligation during an omnibus application to schedule those interviews, and that is not the fault of the

7

Defense." VRP (Oct. 26, 2022) at 44. The superior court also stated that the prosecutor's interview request form created an obligation on the part of the prosecutor to facilitate the interviews when the omnibus application indicated cooperation with scheduling interviews. The superior court rejected the effectiveness of the disclaimer language on the form, stating:

> I don't think the State can rely on language in the intake form to stand for the legal proposition that we don't really have to cooperate, we're just doing it out of the goodness of our hearts *when you have an omnibus application that specifically indicates that there will be some cooperation with witness interviews, and that once it's undertaken -- there's the language in the brackets under the last one* [(the item requesting witness interviews)], *once it's undertaken it will be completed.*
>
> So while I appreciate, [prosecutor], the desire I suppose to -- the desire for the State to now say we have zero obligation to cooperate with the Defense as to interviews, and it's simply always out of the goodness of our heart, and if doesn't work out, oh, well -- I mean that's what the State's position is today that you're proffering on behalf of your employer -- . . . I just can't . . . go there with you.

VRP (Oct. 26, 2022) at 49 (emphasis added). The prosecutor responded by arguing that she had previously informed defense counsel on September 20 that he could reach out to the alleged victims on his own to schedule interviews, showing the prosecution had communicated the interviews could occur without it present. The superior court disagreed and opined that the prosecutor's September 20 statement did not communicate that the prosecution did not need to be present. The following colloquy took place:

> THE COURT: . . . . Regardless factually I also don't find any evidence in the record to indicate that you communicated with [defense counsel] that it was permissible for them to schedule these interviews with the State's witnesses outside of using the form, nor that it was permissible for them to schedule outside of your presence. Can you point to that in the record?
>
> [PROSECUTOR]: I can. In Defense's original motion for dismissal, one of the e-mails in their declaration I had e-mailed them and stated that they could set up witness interviews without our presence.

. . . .

So Defendant's motion filed on September 28th, 2022, declaration by [defense counsel].

. . . .

No. 4, the assigned [Deputy Prosecution Attorney (DPA)] did set one of the alleged victims' interviews for September 20th, 2022; however, we were not notified of the interview, and the DPA effectively cancelled the interview. We were advised that we had, quote, the option of reaching out to them yourself or filing motions to depose.

. . . .

THE COURT: . . . . Okay. So you believe that the sentence ["]we were advised we had the option of reaching out to them yourself or filing motions to depose["] equals that you would have allowed a Defense interview without the presence of the State?

[PROSECUTOR]: Correct.

THE COURT: I don't find that conclusion to be drawn from that sentence. Ha[ving] an option of reaching out to them yourself doesn't say you may interview them yourself. . . . So I don't draw the same conclusion from that sentence.

VRP (Oct. 26, 2022) at 51-54.

Six days later, the superior court entered its findings of fact and conclusions of law on its dismissal of Blakeman's charges. The superior court's findings of fact included the following:

2. Defendant's attorney asked the assigned [DPA] to refer the case to the Clark County Mental Health Court. The DPA advised defense counsel he'd need to provide evidence that the defendant suffered with a mental health condition that would support the DPA's referral to Mental Health Court.

3. Defense counsel asked the DPA for interviews of the alleged crime victims to procure the proof of the defendant's mental health condition and to prepare for trial. Those interviews were not timely set.

4. On August 26, 2022, defense counsel formally requested alleged victim interviews by submitting his request in writing on the form created and required by

the Clark County Prosecuting Attorney's Office to be completed before the DPA would facilitate material witness interviews. No material witness interviews were set by prosecution.

5. On September 8, 2022, defense counsel submitted a second request to the DPA on the required witness interview request form referenced above. The prosecution did not facilitate the scheduling of any material witness interviews.

6. On September 13, 2022, defense counsel filed and served on prosecution a Citation for "Presentation of Defense Omnibus Application" for a hearing set for September 20, 2022, at 1:30 p.m. The assigned DPA reviewed, signed, and returned the defense omnibus application for presentation at the noted hearing.

7. On September 20, 2022, Judge Derek Vanderwood signed the defense Omnibus Application and ordered the prosecution to comply with the defense omnibus discovery requests by September 26, 2022. The prosecution did not timely comply with the court's omnibus discovery order.

8. On September 28, 2022, two days after the omnibus discovery cutoff, the assigned DPA filed and served the "State's Witness List" on defense counsel. Material witness interviews were set for Friday, October 7, 2022, less than 72 hours before the Monday October 10, 2022 trial date. No other "State's" witness interviews were facilitated/scheduled. Said interviews were also set on the very day (Friday) defense counsel previously advised the Clark County Prosecuting Attorney of defense counsel's unavailability.

CP at 27-28. The superior court's conclusions of law stated,

l. The Clark County Prosecuting Attorney's Office's deputies (hereinafter "prosecuting attorney") have an obligation to make a reasonable effort to facilitate defense attorney interviews of the State's material witnesses. *See State v. Wilson*, 149 Wn.2d 1, 65 P.3d 657 (Wash. 2003).

2. The prosecuting attorney undertakes a duty to make a reasonable effort to facilitate material witness interviews when the prosecuting attorney's deputies require defense attorneys to request those interviews on the State's interview request form.

3. The prosecuting attorney's deputies have a duty to make a reasonable effort to comply with a court's CrR 4.7 Omnibus Order before any "cut-off" dates noted in that Omnibus Order. *Id.* The State's response to Defendant's Omnibus Application request no. 23 was ambiguous. As such, the Court interprets that in favor of the Defendant as creating an obligation under CrR 4.7.

4. The prosecuting attorney commits pre-trial mismanagement of its case when it (a) does not make a reasonable effort to facilitate the defense interview of the State's material witnesses, and (b) fails to comply with a court's CrR 4.7 Omnibus Order before discovery and any other "cut-off" dates noted in that Omnibus Order. The State did not make reasonable efforts because the scheduler did not take coverage into account or schedule with another Deputy Prosecuting Attorney when the assigned Deputy Prosecuting Attorney was absent for a pre-scheduled vacation.

. . . .

7. **Dismissal of the action is warranted under CrR 8.3(b)** when the State commits pre-trial mismanagement of its case, and the defendant suffers prejudice as a result thereof.

CP at 29-30 (emphasis added).

The State appeals.

## ANALYSIS

The State argues that the superior court erred by dismissing Blakeman's charges. We agree.

## I. LEGAL PRINCIPLES

CrR 8.3 addresses dismissal of criminal charges based on arbitrary government acts or misconduct:

The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

The dismissal of charges under CrR 8.3(b) is an " 'extraordinary remedy' " that should only occur in the most egregious cases of misconduct or mismanagement. *State v. Mora-Lopez*, 22 Wn. App. 2d 922, 928, 514 P.3d 714 (internal quotation marks omitted) (quoting *State v. Kone*,

11

165 Wn. App. 420, 432, 266 P.3d 916 (2011)), *review denied*, 200 Wn.2d 1020 (2022); *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003).

A superior court may dismiss charges under CrR 8.3(b) only if the defendant shows by a preponderance of the evidence (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. *Mora-Lopez*, 22 Wn. App. 2d at 928. " 'Governmental misconduct need not be evil or dishonest[; s]imple mismanagement is sufficient.' " *Id.* (quoting *Kone*, 165 Wn. App. at 433). The defendant, however, " 'must show actual prejudice, not merely speculative prejudice, affected his right to a fair trial.' " *Id.* (quoting *Kone*, 165 Wn. App. at 433).

When we review a superior court's decision to dismiss charges under CrR 8.3, we must ask whether the superior court's conclusion that both elements were satisfied was a manifest abuse of discretion. *Id.* "A trial court's decision is an abuse of discretion if it is 'manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.' " *Id.* (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). A "decision is untenable 'if it results from applying the wrong legal standard or is unsupported by the record.' " *Id.* (quoting *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017)).

II. APPLICATION

Here, while defense counsel referenced both CrR 4.7(h)(7)(i) and CrR 8.3(b) in their motion to dismiss, we view the superior court's dismissal of Blakeman's charges as being rooted in CrR 8.3(b), using a violation of CrR 4.7 as a reason that prosecutorial mismanagement occurred. The superior court's reason for concluding there was prosecutorial mismanagement appeared to

be that the prosecutor had expressly agreed to facilitate the victim interview but did not make reasonable efforts to do so prior to deadlines in the omnibus order.

We begin our review with considering whether there was prosecutorial mismanagement related to the scheduling of alleged victim interviews because, if not, we need not consider whether Blakeman was prejudiced as a result. *See Wilson*, 149 Wn.2d at 12.

PROSECUTORIAL MISMANAGEMENT BASED ON DUTY TO SCHEDULE INTERVIEWS

The State argues that the trial court erred in concluding that prosecutorial mismanagement occurred based on a lack of reasonable effort to schedule the victim interviews because it did not undertake a duty to schedule the interviews for the defense. We agree.

Courts have recognized that " 'the defendant's right to compulsory process includes the right to interview a witness in advance of trial.' " *Wilson*, 149 Wn.2d at 12 (quoting *State v. Burri*, 87 Wn.2d 175, 181, 550 P.2d 507 (1976)). And, "to force a defendant to choose between the right to a speedy trial and the right to adequately prepared counsel because an interview has not occurred by the speedy trial expiration does materially affect a defendant's right to a fair trial such that prejudice results." *Id.* However, the defendant does not possess an absolute right to interview the State's potential witnesses. *State v. Wilson*, 108 Wn. App. 774, 778, 31 P.3d 43 (2001), *aff'd*, 149 Wn.2d 1, 65 P.3d 657 (2003). Witnesses have the right to refuse to be interviewed. *State v. Hofstetter*, 75 Wn. App. 390, 397-98, 878 P.2d 474, *review denied*, 125 Wn.2d 1012 (1994). Nor is the prosecution generally required to facilitate interviews between the defense and lay-witnesses. *See State v. Vance*, 184 Wn. App. 902, 912, 339 P.3d 245 (2014) (the prosecution was not required to produce witnesses for interviews when they were not in the prosecution's possession and control and the prosecution could not compel the submission of interviews), *review denied*, 182 Wn.2d

1020 (2015); *Wilson*, 108 Wn. App. at 775-76, 780-81 (holding that because witnesses are not required to submit to interviews, prosecutors are not legally obligated to arrange for interviews).

Here, the superior court determined that through the use of the interview form, the county prosecutors "have an obligation to make a reasonable effort to facilitate defense attorney interviews of the State's material witnesses."[4] CP at 29. The superior court appeared to have concluded that, notwithstanding the general rule that the prosecution is not required to facilitate witness interviews, the prosecution here created an obligation for itself to facilitate them. The superior court appeared to support its decision by the prosecuting attorney's office's use of the interview request form and notation on the omnibus order to item 23 about witness interviews. We disagree that the prosecution created any obligation here such that dismissal of the charges was warranted.

First, to the extent the superior court concluded the interview form created the prosecutor's obligation, we disagree. The superior court minimized the effect of the disclaimer language, but the language clearly indicated that the prosecution was not agreeing to undertake a duty to schedule the interviews: the prosecutor's office was going to help schedule the interviews "*as a courtesy only*" and "the State is not agreeing that it is required to facilitate interviews." CP at 21. The form makes clear that the prosecuting attorney's office did not guarantee interviews or agree to

---

[4] The superior court cited to *Wilson*, 149 Wn.2d 1, for this proposition. In *Wilson*, the reviewing court assumed that the prosecution actually agreed to help facilitate the interviews when it agreed to help defense counsel. *Id.* at 8. It therefore analyzed whether, under the assumed duty, the prosecution made reasonable efforts to schedule the interviews it had promised to help schedule. *Id.* at 8, 10-11. The court did not hold that the prosecution was required to help schedule interviews outside of the context of agreeing to help facilitate those interviews with defense counsel. *See id.* at 8-10.

undertake a duty. We reject the conclusion that the interview form created an obligation that would support a dismissal.

Additionally, the prosecutor communicated to defense counsel that he could proceed to schedule interviews with the alleged victims without her involvement.[5] It is true that this confronted defense counsel with the difficult decision of whether to be proactive or to await the typical process. But, at a minimum, it refutes the conclusion that the prosecutor here had committed to an affirmative obligation to such a degree that its violation would have been sufficiently egregious to justify dismissal of the case.

The superior court's second apparent basis for the creation of an obligation, the omnibus order, is similarly unpersuasive. Here, as part of its order dismissing the case, the superior court concluded that the prosecution had committed a violation of its omnibus order:

> 3. The prosecuting attorney's deputies have a duty to make a reasonable effort to comply with a court's CrR 4.7 Omnibus Order before any "cut-off" dates noted in that Omnibus Order. The State's response to Defendant's Omnibus Application request no. 23 was ambiguous. As such, the Court interprets that in favor of the Defendant as creating an obligation under CrR 4.7.
>
> 4. The prosecuting attorney commits pre-trial mismanagement of its case when it . . . (b) fails to comply with a court's CrR 4.7 Omnibus Order before discovery and any other "cut-off" dates noted in that Omnibus Order.

CP at 29 (citation omitted). The request number 23 the superior court cited was the defense counsel's request in the omnibus order for the prosecution to "arrange, prior to trial, for the

---

[5] We acknowledge the superior court rejected the State's claim that this communication should be construed as inviting defense counsel to interview the alleged victims directly. Although we defer to the superior court's credibility determinations, we reach a different conclusion from a plain reading of defense counsel's declaration.

Defendant to interview" the witnesses the prosecution would call at trial. CP at 25. The omnibus order placed the discovery disclosure deadline as September 26.

Despite the superior court's determination that the omnibus order required the interviews to be conducted by the cutoff date, there was no actual indication on the face of the omnibus order that the court "Granted" that defense request. The field to indicate the request was granted was left empty. As such, the omnibus order cannot be used to separately impose an obligation on the prosecution that does not generally exist.

Ultimately, even if the prosecutor could have done more to schedule prompt interviews, the prosecutor did not engage in mismanagement. And the prosecutor's action surely did not rise to the level that this was a case of the such egregious mismanagement that dismissal was warranted. *See Wilson*, 149 Wn.2d at 9. The superior court erred in determining that the prosecutor committed mismanagement. With this conclusion, we do not need to determine whether Blakeman was actually prejudiced by the prosecutor setting interviews for three days before trial. *See id.* at 12 (reversing based on lack of prosecutorial mismanagement and declining to review prejudice). We reverse the superior court's dismissal of Blakeman's charges.

## CONCLUSION

If the superior court was frustrated with the events here, we empathize. The prosecuting attorney's office appears to use an interview form that conveys an expectation that the office will facilitate witness scheduling when, at the same time, it disavows responsibility for any failures. And here, an unfortunate series of scheduling events led to the parties being arguably unprepared for trial. Still, on these facts, the prosecutor did not create, either by agreement or by the omnibus order, the obligations necessary to warrant the extraordinary remedy of dismissal.

16

No. 57653-8-II

We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, A.C.J.

GLASGOW, J.