# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JOSHUA DAVID MICHAEL,<br><br>Appellant. | No. 87070-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Joshua Michael appeals his convictions for second degree identity theft and second degree theft. He claims that the trial court erred by not dismissing his case for governmental misconduct, his second degree theft conviction was not supported by sufficient evidence, and the trial court erred by ordering his sentence to run consecutively with his sentence from a prior conviction. Because the trial court did not err and Michael's conviction was supported by sufficient evidence, we affirm.

I

On the morning of May 25, 2023, Jaylinn Phillips woke up to an alert on her phone that a transaction had been made with her credit card. Phillips initially worried that she had accidentally left her credit card at the Ilani Casino, where she had been the night before. But Phillips had stayed at her mother's house, which is not near the Ilani Casino. And after contacting her credit card company, she discovered that the transaction had been made at a gas station near her mother's

house. Phillips then suspected that her card was missing for different reasons. Phillips had gone to sleep in her mother's unlocked room with her purse by her bed. That night, Phillips, her mother, Michael, Michael's girlfriend, and Michael's girlfriend's daughter were staying at the house. When Phillips woke up on May 25, everyone was still in the house except for Michael.

On May 25th, at a Chevron gas station, approximately ten minutes from Phillips's mother's house, a transaction was recorded on video. The video recording shows a man purchasing a fuel injector, "Armor All," "several snapback hats," a car charger, a "type C cord," and cigarettes. The items purchased in the video recording matched a Chevron receipt submitted into evidence, totaling $187.92.

After reviewing screenshots of the video recording, Phillips identified the man in the screenshot as Michael, and the car at the Chevron as the same type of red SUV that Michael drove. Phillips stated that she was "150%" confident in her identification of Michael. Phillips identified the credit card used in the video recording as hers, as it bore a distinctive cassette tape design.

Michael was charged with one count of second degree identity theft and one count of second degree theft. The jury convicted him on both counts. At sentencing, the trial court imposed the maximum standard range sentence of 57 months. The trial court directed that this sentence was to run consecutively with a sentence that Michael was then serving on a mental health sentencing alternative (MHSA) for second degree robbery in Thurston County under cause number 21-1-00944-34.

2

Michael appeals. He contends the trial court should have dismissed his case for governmental misconduct, there was insufficient evidence to convict him, and his sentence should not run consecutively with his second degree robbery MHSA.

II

Michael asserts that because defense counsel had not yet interviewed Phillips by the day of the trial, the trial court erred by not granting his motion to dismiss for governmental misconduct pursuant to CrR 8.3(b). We disagree. The prosecutor did not violate any discovery obligations under CrR 4.7 and did not commit governmental misconduct.

On the morning of the trial, defense counsel complained that he had been unable to interview Phillips and requested that the trial court exclude her as a witness or dismiss based on governmental mismanagement under CrR 8.3(b). Michael did not want to ask for a continuance or waive his speedy trial rights. Defense counsel had struggled to locate Phillips for an interview, but he blamed this on Phillips "being uncooperative" and conceded that "it's [not] the State's fault." The prosecutor had worked to schedule an interview with Phillips and defense counsel in the days before trial, but those efforts were unsuccessful because of scheduling conflicts. Ultimately, the trial court resolved the issue by giving defense counsel time to interview Phillips at 1:00 p.m. that day, before the 1:30 p.m. trial start time.

"We review the trial court's decision to deny a motion to dismiss under CrR 8.3 for abuse of discretion, that is, whether the decision was manifestly

3

unreasonable, based on untenable grounds, or made for untenable reasons." State v. Kone, 165 Wn. App. 420, 433, 266 P.3d 916 (2011) (citing State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). Under CrR 8.3(b), courts may " 'dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.' " Kone, 165 Wn. App. at 432 (quoting CrR 8.3(b)). Dismissal of charges under CrR 8.3(b) is an " 'extraordinary remedy.' " Kone, 165 Wn. App. at 432 (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 658, 71 P.3d 638 (2003)).

Prosecutors have certain discovery obligations, including providing the names, addresses, written or recorded statements, and substance of any oral statements of witnesses. CrR 4.7(a)(1)(i). However, prosecutors are not generally required to facilitate interviews between the defense and witnesses. State v. Vance, 184 Wn. App. 902, 912, 339 P.3d 245 (2014). The defense does not have an absolute right to interview potential State witnesses. State v. Wilson, 108 Wn. App. 774, 778, 31 P.3d 43 (2001), aff'd, 149 Wn.2d 1, 65 P.3d 657 (2003). Witnesses have the right to refuse to be interviewed. State v. Hofstetter, 75 Wn. App. 390, 396-97, 878 P.2d 474 (1994). In Wilson, the trial court abused its discretion in granting a CrR 8.3 motion to dismiss because it "plac[ed] an affirmative obligation upon the State to produce [a witness] for an interview" when the State had promised to produce the witness but the witness then refused to speak to defense counsel. Wilson, 108 Wn. App at 778, 780-81.

4

Here, the prosecutor worked with defense counsel to schedule an interview with Phillips. The prosecutor made these efforts despite having no obligation to assist defense counsel in arranging an interview. Though these efforts did not yield a scheduled interview, defense counsel still had the opportunity to interview Phillips before the start of trial. There was no governmental mismanagement because the prosecutor did not violate any discovery obligations, tried to assist in the interview scheduling, and because the interview with Phillips actually occurred.

III

Michael claims that there was insufficient evidence to convict him for second degree theft. He concedes he was in possession of stolen property, but disputes the sufficiency of other evidence to support the conviction. We disagree. The State proved sufficient corroborating evidence to sustain Michael's second degree theft conviction.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. In such cases, appellate courts view the evidence in the light most favorable to the State, drawing reasonable inferences in the State's favor." State v. Cardenas-Flores, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017) (citations omitted). " 'Circumstantial evidence and direct evidence are equally reliable' in determining the sufficiency of the evidence." State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470

(2010) (quoting State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)). In cases involving burglary, possession of stolen property accompanied by " 'indicatory evidence on collateral matters,' " such as the defendant's presence near the scene of the crime, will support a conviction. State v. Mace, 97 Wn.2d 840, 843, 650 P.2d 217 (1982) (quoting State v. Garske, 74 Wn.2d 901, 903, 447 P.2d 167 (1968)). In State v. Ehrhardt, a burglary case, evidence of the defendant's presence near the scene of the crime and possession of stolen property was sufficient evidence to convict. 167 Wn. App. 934, 943-44, 276 P.3d 332 (2012).

To support a conviction for second degree theft, the State had to prove beyond a reasonable doubt that on May 25, 2023, Michael (1) wrongfully obtained or exerted unauthorized control over the property of another; (2) that property was an access device; (3) Michael intended to deprive another person of the access device; (4) and the act occurred in Washington. RCW 9A.56.020(1)(a), RCW 9A.56.040(1)(d). " 'Access device' means any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value." RCW 9A.56.010(1).

The State presented evidence at trial that the crime took place in Clark County, Washington and involved a credit card, or access device. When Phillips went to sleep on May 24, there were five people staying in her mother's house, including Michael. Phillips slept in her mother's unlocked room with her wallet and purse nearby. When she woke up in the morning, there were four people in the

6

house—Michael being the sole absence. Video evidence showed Michael and a car resembling his at a Chevron gas station, only 10 minutes from Phillips's mom's house on the morning of May 25. And video evidence captured Michael making a transaction at the Chevron with a distinctive cassette tape credit card, identified by Phillips as hers. This evidence supports that Michael was at the scenes of the crime, Phillips's mom's house and the Chevron, and he made the unauthorized transaction using Phillips's credit card. Drawing all reasonable inferences in the State's favor, this is evidence is sufficient to support the second degree theft conviction.

IV

In a statement of additional grounds for review (SAG), Michael asserts that the State requesting a consecutive sentencing under RCW 9.94A.589(2) was error and affected his "due process of having a fair trial/sentencing" and contributed to the "mismanagement of the whole case." Michael claims that this earlier case had not been sentenced yet and that a point should not have been added to his offender score for being on community custody. We disagree. The trial court correctly imposed a consecutive sentence under 9.94A.589(2)(a) because at the time of sentencing, Michael was on community custody while under sentence for a conviction of a felony.

The issue of consecutive sentencing under RCW 9.94A.589(2) is inadequately briefed. We may decline to review issues for which an inadequate argument has been made. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011); State v. Thomas, 150 Wn.2d 821, 868-

7

69, 83 P.3d 970 (2004), (courts "will not review issues for which inadequate argument has been briefed or only passing treatment has been made."), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Michael cites RCW 9.94A.589(2) and points to due process and mismanagement but provides no other citations or explanation. However, we will address the issue here, as we infer Michael's argument to be that consecutive sentencing was inappropriate because his being on community custody for a prior felony conviction is not the same as being "under sentence for conviction of a felony."

The relevant statute reads in full,

> Whenever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term of confinement shall not begin until expiration of all prior terms of confinement. However, any terms of community custody shall run concurrently to each other, unless the court pronouncing the current sentence expressly orders that they be served consecutively.

RCW 9.94A.589(2)(a). Persons under community supervision are "under sentence for conviction of a felony" for purposes of RCW 9.94A.589. In re Post-Sentence Review of Allery, 6 Wn. App. 2d 343, 347, 430 P.3d 1150 (2018). RCW 9.94A.695 provides a mental health sentencing alternative (MHSA) to defendants that meet certain conditions. Under a MHSA, the defendant must have been convicted of a felony and must agree to community supervision. RCW 9.94A.795(1). If the defendant is eligible and the court agrees to impose the MHSA, the court imposes a term of community custody (RCW 9.94A.695(4)) consistent with RCW 9.94A.703, the statute outlining community custody

conditions. RCW 9.94A.795(8)(a). A MHSA necessarily involves community supervision.

Michael was convicted and sentenced for second degree robbery in Thurston County on March 30, 2022. He received a MHSA for the Thurston County offense. When he was sentenced by the trial court in the case before us, the court specified that his sentence was to run consecutively with his Thurston County sentence. Michael was a person "under sentence for conviction of a felony," as he was under community supervision for his MHSA. The trial court correctly imposed its sentence to run consecutively under RCW 9.94A.589(2)(a).

Affirmed.

_Birk, J._

WE CONCUR:

_Díaz, J._                    _Bowman, J_